**Jamal Ali FARAH, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–70252.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 2003.

Filed Nov. 14, 2003.

Cheri Attix, Law Office of Cheri Attix, San Diego, CA, for the petitioner.

Stephen J. Flynn and Jacqueline R. Dryden, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for the respondent.

Before SCHROEDER, Chief Judge, THOMPSON and GRABER, Circuit Judges.

SCHROEDER, Chief Judge.

Petitioner, Jamal Ali Farah, petitions for review of the BIA's decision denying his application for asylum and adopting the opinion of the immigration judge ("IJ"). The IJ had ordered Farah removed on the basis of the finding that Farah was not credible and had further ordered Farah permanently ineligible for any benefits under the immigration laws of the United States because his application was frivolous. *See* 8 U.S.C. § 1158(d)(6).

In this petition for review, Farah first challenges the IJ's credibility determination underlying his removal order. Farah, however, bears a heavy burden, for he is required to establish that the evidence was so compelling that this court must find it worthy of credence and must order him eligible for asylum relief. *INS v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Farah has not borne this burden.

Farah also challenges the IJ's finding that he knowingly filed a frivolous asylum application. Such a finding carries the severe penalty of a permanent bar to immigration relief, so, INS regulations require there to be sufficient opportunity to account for discrepancies or implausibilities. 8 C.F.R. § 208.20. Our research discloses no case in which we have upheld such a bar, and we agree with petitioner that the IJ's finding was infirm for failure to follow the requirements of that regulation. We therefore affirm the order of removal but vacate the order of permanent ineligibility for immigration benefits under section 208(d)(6) of the Immigration and Nationality Act (the "Act" or "INA").[1]

---

1. Section 208(d) of the Act, 8 U.S.C. § 1158(d), provides in relevant part:
(d) Asylum procedure
. . . .

(4) Notice of privilege of counsel and consequences of frivolous application
At the time of filing an application for asylum, the Attorney General shall—

## I. BACKGROUND:

Farah, a citizen of Somalia, stated in his asylum application that he arrived in New York on January 24, 1999, using concededly false travel documents, and then transferred immediately to a flight to San Diego. He filed his application for asylum with the INS on February 16, 1999, conceding removability at his hearing before the IJ on April 27, 1999.

In his asylum application, Farah asserted eligibility for asylum because of past persecution on account of membership in a particular group, his clan. He further stated that he fears future persecution by the United Somali Congress (the "USC") if he returns to Somalia. His application stated that the USC looted his family's business and attacked his family home as part of an orchestrated plan of ethnic cleansing. According to his application, the USC militiamen shot his two cousins and knocked him unconscious because he and his family are members of the Meheri clan.

At the hearing, Farah, his alleged half-brother, Ahmed Ali Farah, and his expert witness on Somalia, Dr. Asha Samad, all testified concerning Farah's clan and his identity. Dr. Samad stated that Farah is from the "Meheri Ismail" clan and that Farah's father's name was "Ali Farah Mahamoud Ismail." Farah, however, testified that his father's name was "Ali Farah Abdi." Later Dr. Samad clarified that Farah's father's full name was "Ali Farah Abdi Farah Mahamoud Ismail Mahamoud Saleh" and that Farah's father would be known as "Ali Farah Abdi." The IJ found that Dr. Samad's testimony was inconsistent.

Farah's alleged half-brother, Ahmed Ali Farah, testified that his father's name was "Ali Farah Abdi," although on his own application he had listed "Ali Farah Ali" as his father. He explained that at the hearing as a clerical error. Farah's half-brother also listed a different clan association than the "Meheri" in his application, and he did not identify Jamal Farah as a sibling on the application. At the hearing, the half-brother explained that, when he filed for asylum, he listed his clan as traced from his mother's patrilineal descent, not his father's, and that he did not include Farah as a sibling because, unlike Farah's application, his application was derivative of his mother's clan, not his father's. The IJ also found the half-brother's testimony inconsistent and lacking credibility.

Additionally, Farah's alleged half-brother testified that, after Farah arrived in San Diego, the half-brother sent Farah their father's identification card for use in Farah's asylum application. The IJ, however, doubted whether, if Farah arrived in the United States on January 24, he could have filed his asylum application on February 16. The IJ concluded that Farah was not credible in claiming that he navigated through a foreign country and language, found a place to live, and filed an asylum application within that short period of time.

At the conclusion of Farah's initial appearance, the IJ reviewed the penalties for

(A) advise the alien of the privilege of being represented by counsel and of the consequences, under paragraph (6), of knowingly filing a frivolous application for asylum; and (B) provide the alien a list of persons (updated not less often than quarterly) who have indicated their availability to represent aliens in asylum proceedings on a pro bono basis.
. . . .

(6) Frivolous applications
If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4)(A), the alien shall be permanently ineligible for any benefits under this chapter, effective as of the date of a final determination on such application.

filing a frivolous application with Farah, and Farah indicated he understood the penalties and desired to go forward. During the course of the proceedings, the IJ did not, however, go through specific inconsistencies or implausible elements of Farah's claim, upon which the frivolousness finding relied, and did not give Farah an opportunity to explain them.

Eventually, the IJ entered an order setting forth his findings and his overall adverse credibility determination. The IJ further concluded that Farah had received notice under section 208(d)(4) of the Act and had knowingly made a frivolous application for asylum. The IJ ordered Farah's removal to Somalia and denied requests for asylum, withholding of removal, and relief under the United Nations Torture Convention. The IJ ordered that Farah be permanently ineligible for any benefits under the immigration laws.

The BIA reviewed the administrative record and then entered a summary order adopting and affirming the IJ's decision in its entirety, dismissing the appeal in an order dated May 9, 2001. This petition followed.

## II. Discussion:

■ Where the BIA adopts the findings and reasoning of the IJ, this court reviews the decision of the IJ as if it were that of the BIA. *Al–Harbi v. INS*, 242 F.3d 882, 887 (9th Cir.2001). The standard of review is extremely deferential: "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(A)-(B). Thus, when a petitioner contends that the IJ's findings are erroneous, the petitioner "must establish that the evidence not only *supports* that conclusion, but *compels* it." *Singh v. INS*, 134 F.3d 962, 966 (9th Cir. 1998) (citation and internal quotation omitted).

The same standard applies to the IJ's credibility findings. *Chebchoub v. INS*, 257 F.3d 1038, 1042 (9th Cir.2001); *Prasad v. INS*, 47 F.3d 336, 338 (9th Cir.1995). Thus, this court must deny Farah's petition unless Farah has presented evidence "so compelling that no reasonable factfinder could find" that he was not credible. *Garrovillas v. INS*, 156 F.3d 1010, 1015–16 (9th Cir.1998); *see also Elias–Zacarias*, 502 U.S. at 483–84, 112 S.Ct. 812.

■ Here, the IJ established a legitimate, articulable basis to question Farah's credibility and offered specific, cogent reasons for disbelief as required under our law. *See Shah v. INS*, 220 F.3d 1062, 1067 (9th Cir.2000). These credibility findings went to key elements of the asylum application, including identity, membership in a persecuted group, and date of entry in the United States. Eligibility for asylum depends on the credible establishment of these elements. 8 U.S.C. § 1158(d)(5)(A)(i). We must defer to the IJ's credibility findings and uphold the denial of asylum relief.

■ Because we affirm the BIA's determination that Farah failed to establish eligibility for asylum, we also affirm the denial of Farah's application for withholding of removal. *See Pedro–Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir.2000) ("A failure to satisfy the lower standard of proof required to establish eligibility for asylum therefore necessarily results in a failure to demonstrate eligibility for withholding of deportation.")(internal citation omitted).

■ A failure to establish eligibility for asylum does not necessarily doom an application for relief under the United Nations Convention Against Torture, however. In *Kamalthas v. INS*, 251 F.3d 1279, 1282–83 (9th Cir.2001), we expressly rejected the BIA's determination that an " 'applicant [fails] to satisfy his burden of presenting a

prima facie case for relief under the Convention where he merely restates facts that have already been deemed incredible at a prior [asylum] hearing' " (alteration in original). Instead, we held that the standards for the two bases of relief are distinct and should not be conflated. We explained that, "pursuant to 8 C.F.R. § 208.16(c)(3), 'all evidence relevant to the possibility of future torture shall be considered,' even apart from any prior findings in the asylum context." *Id.* at 1283. In that case, we particularly pointed to the fact that "nowhere in its opinion did the BIA consider the documented country conditions in Sri Lanka which corroborate the widespread practice of torture against Tamil males." *Id.*

■ In this case, by contrast, Farah's claims under the Convention Against Torture are based on the same statements, by Farah and others, that the BIA determined to be not credible. Farah points to no other evidence that he could claim the BIA should have considered in making its determination under the Convention Against Torture. Therefore, because we affirm the BIA's determination that Farah and his witnesses were not credible, we must similarly affirm the rejection of Farah's claim under the Convention Against Torture.

■ The IJ also concluded, however, that Farah's asylum application was so inconsistent that it rose to the level of being knowingly frivolous; such a finding is a permanent bar to relief under the immigration laws. INA § 208(d)(4), (d)(6); 8 U.S.C. § 1158(d)(4), (d)(6). This court has apparently never recognized, in any published opinion, a finding under § 1158(d)(6) of a frivolously filed asylum application. The closest authority is from the Fifth and Eleventh Circuits. *Efe v. Ashcroft*, 293 F.3d 899 (5th Cir.2002); *Barreto–Claro v. United States Attorney Gen.*, 275 F.3d 1334 (11th Cir.2001). These

cases reaffirm the importance, as required by regulation, of the applicant's receiving an opportunity to explain any discrepancies in the testimony before a finding of frivolousness—permanently barring immigration relief—is entered. *Efe*, 293 F.3d at 908; *Barreto–Claro*, 275 F.3d at 1339; *see also* 8 C.F.R. § 208.20 ("Such finding shall only be made if the [IJ] or [BIA] is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim.").

In *Efe*, the Fifth Circuit recently affirmed an IJ's finding that the petitioner had knowingly filed a frivolous asylum application with intentionally false statements. *See Efe*, 293 F.3d at 908. The petitioner had misled the court about his age by providing inconsistent answers regarding his age at his alleged time of entry in response to different questions asked in the course of the proceedings. Important to the frivolousness determination was the evidence of dental records that revealed the petitioner's true age to a significant degree of certainty. *Id.* at 902 n. 1. The court stressed that the petitioner had ample opportunity to clarify his contradictory testimony and did not satisfactorily do so. *Id.* at 908.

In *Barreto–Claro*, the Eleventh Circuit affirmed the BIA's "strict, no tolerance statutory interpretation, that applicants must tell the truth or be removed," and upheld a finding of knowing frivolousness. *Barreto–Claro*, 275 F.3d at 1339. The petitioner, a Cuban national, had filed an original asylum application stating that he traveled directly to the United States from Cuba. *Id.* at 1336. Then the petitioner filed a second application admitting that he lied in his first application. The Eleventh Circuit stressed that the petitioner essentially did not argue that his fraudulent

statements were not material nor knowingly made, but instead argued why he lied, i.e., as the court described it, "'why concededly material fabrications were knowingly made.'" *Id.* at 1339 (court quoting the BIA). The court emphasized that the BIA had been satisfied that the petitioner was given sufficient opportunity to account for any discrepancies or implausible aspects of his claim, and the petitioner did not challenge the materiality or scienter elements of the finding of a knowingly filed frivolous asylum application. *Id.*

In this case, the IJ found two specific examples of fabrication that were relevant to his decision: the petitioner's entry date and his travel history. In his decision, the IJ held:

> It is clear to this Court the respondent did not enter in New York on January 24, 1999, in the manner in which he stated. He has fabricated that portion of his claim. He has also been untruthful as to whether he was in Nairobi, Kakuma, London, England or any other place before he came to the United States.

Farah had ample opportunities to explain the discrepancies that led to the adverse credibility finding—for example, discrepancies in his father's name and in his clan identity. To support the finding of frivolousness, however, the IJ relied with particularity on different discrepancies between what Farah said and the extrinsic evidence. Farah was not given an adequate opportunity to address those additional discrepancies before the ruling on frivolousness was made. 8 U.S.C. § 1158(d)(6); *Efe*, 293 F.3d at 908; *Barreto-Claro*, 275 F.3d at 1339; 8 C.F.R. § 208.20.

In sum, the evidence presented does not compel this court to find Farah's evidence was worthy of belief, and we defer to the factfinder's adverse credibility determination. The absence of a proper opportunity for Farah to explain all discrepancies in the record, however, requires us to overturn the conclusion that the application was knowingly frivolous.

Farah's petition for review of the BIA's decision is DENIED as to the denial of asylum eligibility, but GRANTED as to the finding that his application was frivolous.

Petition GRANTED in part, DENIED in part, and REMANDED.