

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-13-2004

# Crivoseia v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2119

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Crivoseia v. Atty Gen USA" (2004). *2004 Decisions.* Paper 504.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/504

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 03-2119

_____

ANDREI CRIVOSEIA;
NATALIA BONDARENCO;
ANDREI BONDARENCO,
Petitioners

v.

JOHN ASHCROFT,
Attorney General of the United States,
Respondent

_____

On Petition for Review of an Order of the
Immigration and Naturalization Service
Board of Immigration Appeals
(BIA Nos. A75-090-604,
A75-090-605, and A75-090-606)

_____

Argued April 13, 2004

Before:  RENDELL, COWEN and LAY*, <u>Circuit</u> <u>Judges</u>.

(Filed:    July 13, 2004)

_____

_____

* Hon. Donald P. Lay, Senior Judge of the United States Court of Appeals for the
Eighth Circuit, sitting by designation.

Tatiana S. Aristova      [ARGUED]
Law Offices of John J. Gallagher
1760 Market Street, Suite 1100
Philadelphia, PA  19103
   *Counsel for Petitioners*

Michelle R. Thresher      [ARGUED]
U.S. Department of Justice
Office of Immigration Litigation
1331 Pennsylvania Avenue, N.W.
Washington, DC   20530

Linda S. Wendtland
Douglas E. Ginsburg
John M. McAdams, Jr.
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC   20044
   *Counsel for Respondent*

---

OPINION OF THE COURT

---

RENDELL, <u>Circuit Judge</u>.

Andrei Crivoseia, his wife Natalia Bondarenco, and her son Andrei Bondarenco seek review of the final order of the Board of Immigration Appeals ("BIA") denying them asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Petitioners contend that the IJ incorrectly denied asylum based upon their failure to file within one year of admission to the United States and that the IJ's denial of both withholding of removal and CAT relief was unsupported by substantial evidence.

2

We have jurisdiction pursuant to 8 U.S.C. § 1252(b). We will deny the petition for review.

## I.

We write for the parties, who are already familiar with the facts of this case. Therefore, we limit our discussion to those facts essential to our decision. Petitioners are citizens of Moldova who entered the United States without inspection in January of 1997 by crossing the Mexican border into the United States. They were spotted by a border patrol helicopter and thereafter given a notice to appear for a hearing at an Immigration Court in Chicago; instead, they traveled to Canada and applied for asylum there.

When their application for asylum in Canada was denied, petitioners were removed from Canada to the United States in March 1999. They were then charged by the Immigration and Naturalization Service with removeability under section 212(a)(6)(A)(i) of the Immigration and Naturalization Act as aliens present without having been admitted or paroled. At their hearing, the petitioners conceded removeability, but applied for asylum, withholding of removal, and protection under the CAT.

At their hearing, the petitioners testified to suffering persecution on the basis of their Jewish heritage. They recounted several anti-semitic attacks, including an attack on Natalia Bondarenco and her son at their home in 1995 and the robbery of Andrei Crivoseia's music store in 1997. After a hearing and several continuances to enable

3

petitioners to obtain certified documentary evidence, the Immigration Judge ("IJ") issued an oral decision denying their claim for asylum based upon petitioners' failure to file for asylum within one year of entry into the United States. Further, the IJ denied their claims for withholding of removal and protection under CAT based upon his view that the petitioners lacked credibility and had failed to adequately corroborate their claims. Moreover, the IJ found that petitioners had filed a frivolous application for asylum. The BIA, on appeal, affirmed the IJ's decision, except for the finding that the petitioners' application was frivolous.

## II.

The Attorney General may grant asylum to any alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A). The burden to prove a well-founded fear of persecution lies with the applicant, who must establish a genuine fear of persecution, and demonstrate that a reasonable person in the same circumstances would similarly fear persecution. The applicant's own testimony may be sufficient to establish eligibility for asylum, as long as the testimony is credible. See 8 C.F.R. § 208.13(a).

Our review is limited to ensuring that any findings are supported by substantial evidence. Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc). We may reverse

4

the IJ's decisions only if "any reasonable adjudicator [would] be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

III.

A.

The IJ ruled that the petitioners' asylum application was untimely. Pursuant to 8 U.S.C. § 1158(a)(2)(B), an alien must prove by clear and convincing evidence that he filed his asylum application within one year of arrival in the United States. The IJ may excuse untimeliness and consider an application if an alien demonstrates that there were extraordinary circumstances relating to the delay in filing. 8 U.S.C. § 1158(a)(2)(D). The petitioners concede that they arrived in the United States in 1997 but only filed their application for asylum in February of 2000; yet despite this apparent untimeliness, the petitioners argue that their application qualified under the exception for extraordinary circumstances. However, we conclude that we lack jurisdiction to review this determination, based upon the language of 8 U.S.C. § 1158(a)(3), which divests courts of the power to review the Attorney General's decision regarding the timeliness of an asylum application or whether the extraordinary circumstance exception is applicable. See Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003) (joining several other sister courts of appeals in holding that "the language of 8 U.S.C. § 1158(a)(3) clearly deprives us of jurisdiction to review an IJ's determination that an asylum petition was not filed within the one year limitations period, and that such period was not tolled by

5

extraordinary circumstances."). Accordingly, we may not entertain the petitioners' challenge to the IJ's determination that the petitioners' application for asylum was untimely.[1] However, their claims for withholding of removal and protection under the CAT are not subject to this jurisdictional bar, and we consider their arguments with respect to those claims next.

B.

Having dismissed the petitioners' asylum application as untimely, the IJ considered their claims for withholding of removal. The standard for withholding of removal is more stringent than that for asylum. "In order to qualify for withholding of removal, an applicant must show a 'clear probability' that his or her life or freedom would be threatened if s/he is deported." Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003) (quoting Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2001)). Doubting the credibility of the

---

[1]The IJ stated that even if their application was not time-barred, he would have rejected the petitioners' asylum claims on adverse credibility grounds. Indeed, the IJ went further and determined that the petitioners had filed a frivolous application for asylum. See 8 C.F.R. § 208.20. The BIA on review set aside the frivolous application determination, while upholding the remainder of the IJ's decision. On appeal, the petitioners contend that having found that their application was not frivolous, the BIA was compelled to find that their asylum application was actually credible. However, the petitioners conflate the high standard for a frivolous application determination, which involves the deliberate fabrication of a material element of an asylum petition, with the lesser standard for an adverse credibility determination. Applications that are deemed to be actually frivolous are very rare. See, e.g., Farah v. Ashcroft, 348 F.3d 1153, 1154 (9th Cir. 2003) ("Our research discloses no case in which we have upheld such a bar."). We have no reason to question the BIA's finding that the petitioners did not file a frivolous application at the same time that it adopted the IJ's determination that they were not credible.

6

petitioners' specific accounts of past persecution and their general assertions concerning anti-semitism in Moldova, the IJ concluded that the petitioners failed to meet this weighty burden.

Petitioners argue that the IJ unreasonably rejected their testimony, which they claim was consistent throughout the proceedings. While we are troubled by certain portions of the IJ's reasoning regarding their credibility, we have little trouble concluding that substantial evidence supported the IJ's ultimate determination adverse to their credibility.

The problematic aspects of the IJ's opinion involved certain parts of the petitioners' stories that the IJ found to involve strange or abnormal behavior. For instance, the IJ found it curious that the petitioners did not report their persecution, which included being beaten on several occasions, to the police. Natalia Bondarenco had testified that, in 1995, she and her son were attacked in their apartment by five men, one of whom was dressed in a police officer's uniform, who tied up Bondarenco and her son, insulted them and vandalized the walls by spray-painting anti-semitic epithets. Petitioners did not notify the police, fearing that the police had been involved. The IJ found that their failure to contact the police "absolutely makes no sense at all." Further, the IJ found it was beyond belief that, after such an incident, Bondarenco neglected to take photographs of the damage for subsequent presentation to the police. But we wonder whether residents of a relatively poor country like Moldova should be expected to have a

7

camera available in their homes.  Further, perhaps it would have made little sense for the petitioners to have produced photographic evidence of a crime to the police, when they had reason to believe the police were involved in the incident.[2]

Despite the foregoing problems with certain aspects of the IJ's credibility analysis, we find that the IJ's adverse credibility determination was nevertheless supported by substantial evidence.  Of particular significance to the IJ was the lack of evidence that the petitioners were persecuted on the basis of their Jewish heritage.   The IJ rejected the petitioners' contention that they were being persecuted on account of their Jewish ethnicity, because they failed—notwithstanding his having given them ample time—to produce documentary evidence to show "why anyone in Moldova would consider the [the petitioners] to be Jews."  The IJ noted that the petitioners did not practice their religion and that they do not have Jewish names.

More importantly, the IJ concluded that their claims were belied by the general country conditions in Moldova, which do not indicate pervasive anti-semitism in that country.  Indeed, the IJ observed that not only was the State Department Country Report completely silent on the issue of an anti-semitism problem in Moldova, but the very report that the petitioners rely on to corroborate such anti-semitism undercut their argument.

---

[2]Likewise, the IJ faulted Crivoseia for not contacting the police after being attacked in his music store in November of 1996.  But while Crivoseia did not contact the police, as the IJ himself noted, their neighbors did.  We fail to see why Crivoseia should have called the police a second time.  In any event, Crivoseia testified that the police appeared disinterested in the crime and instead asked him which compact discs were popular.

That report, authored by the Councils for Soviet Jews on Anti-Semitism, chronicled Jewish life in Moldova. While expressing doubts over the report's objectivity, the IJ noted that it contained several relatively sanguine accounts of Jewish life in Moldova, including statements by a Jewish leader in Moldova, who believed that there was little anti-semitism in Moldova. The report also states that Hebrew and Yiddish are supported as minority languages and that the government had pledged to accommodate ethnic minorities, including Jews and allowed the Jewish press to publish with relative independence. Although the report also contained accounts of several anti-semitic incidents from the late 1980s through the mid-1990s, the IJ's optimistic interpretation of the report was not unreasonable. See Kayembe v. Ashcroft, 334 F.3d 231, 236–37 (3d Cir. 2003) ("Just because the State Department report cuts both ways, however, does not mean that it does not constitute substantial evidence."). Thus, we conclude that there was substantial evidence to support the IJ's adverse credibility determination and his denial of the petitioners' claims for withholding of removal and under the CAT.[3]

### III.

Accordingly, we conclude that the BIA opinion and determination were supported

---

[3]The IJ found that the petitioners were ineligible for CAT relief because they had "not shown that they are more likely than not to be tortured if they return to Moldova." We reject the petitioners' contention that the IJ erred by failing to consider the documentary evidence in the record. As noted above, the IJ not only analyzed the State Department report but cited to the very report on which petitioners' relied. Accordingly, we find no fault with the IJ's denial of CAT relief.

by substantial evidence, and we will DENY the petition for review.

_____