**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN KALOUMA,

*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

*Respondent.*

No. 03-74488

Agency No.
A78-535-064

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 11, 2007—Pasadena, California

Filed August 28, 2007

Before: John T. Noonan, Richard A. Paez, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Noonan;
Dissent by Judge Tallman

10745

**COUNSEL**

Mark A. Teeter, Newport Beach, California, for the petitioner.

Carol Federighi, Assistant United States Attorney, Washington, D.C., for the respondent.

**OPINION**

NOONAN, Circuit Judge:

John Kalouma petitions for review of a decision of the Board of Immigration Appeals ("the Board") summarily affirming the decision of an Immigration Judge denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. Holding that the Immigration Judge ("IJ") committed an error of law that permeated his decision, we reverse and remand.

FACTS AND PROCEEDINGS

John Kalouma entered the United States in March 2001, was intercepted by the Border Patrol, identified himself as Sudanese, and was promptly charged with inadmissibility. At a hearing before the IJ in 2001, Kalouma admitted the charge and applied for relief. On April 24, 2002, Kalouma's case was presented to the IJ, who issued an oral decision, denying it. Kalouma appealed to the Board of Immigration Appeals. The Board, on October 23, 2003, adopted the IJ's decision, which thus became central to Kalouma's timely petition to us.

At the hearing, Kalouma testified that he was a native of Sudan, a Nuer, born in 1972 in Khartoum, to a family from Shambe in southern Sudan, the son of William and Adasha Kalouma. Kalouma identified himself as a Christian and, more specifically, as a Catholic. Kalouma went on to set out

his experiences of persecution by Muslims or Arabs — he used the terms interchangeably.

After hearing Kalouma on direct and on cross-examination by the Government and by himself, the IJ gave his oral decision. In his first sentence, he referred to Kalouma as "a person of unknown identity." Then, after reviewing the procedural steps in the case and the law governing Kalouma's application, he went on as to the changes made in 1996 by the Illegal Immigration Reform and Immigrant Responsibility Act, 8 U.S.C. § 1158. He stated:

> Congress has added Section 208(d)(5)(A) of the Act which enumerates very specific procedures that must be followed regarding an individual's identity before asylum can be granted. The law now requires that "asylum cannot be granted until the identity of the applicant has been checked" against all appropriate places enumerated within the statute.

> It would appear then that Congress has imposed a requirement that an identity must be checked and that it is an absolute requirement before asylum can be granted. It would seem to mean that if an individual who would be otherwise eligible for asylum refuses to have an "identity" check notwithstanding other factors impacting eligibility, this individual could not be granted asylum. It would also seem to suggest, although the Court is not aware of any specific regulations or case law that would offer further guidance, that if the person's "identity" is undetermined, then that person would not be able to be granted asylum as it would seem to follow that the identity would not be able to be checked if it was unknown identity.

The IJ continued:

The Court emphasizes that since the amendments made to the Act by IIRAIRA, Congress for the first time has imposed two new requirements mentioned above that need to be met for an asylum seeker. In this case, of those two amendments, the one that seems to impact or have the greatest impact is the question of "identity." It suggests to this Court that before an identity can be checked, the Immigration and Naturalization Service and the Executive Office for Immigration Review must have an idea of an individual's identity before it can be checked within the parameters expressed by the statute. This Court is not aware of any published decision from the Board of Immigration Appeals or precedent decisions which discuss the impact that the identity requirement now has on the burden of proof.

## ANALYSIS

We review de novo the IJ's statement of the law. *Singh v. INS*, 134 F.3d 962, 966 (9th Cir. 1998). Acknowledging that he was not aware "of any specific regulations or case law" on the point, the IJ attributed a pivoted place to the amendment to 8 U.S.C. § 1158(d). The relevant language reads as follows:

(5)(A) Procedures

The procedure established under paragraph (1) shall provide that —

(i)  asylum cannot be granted until the identity of the applicant has been checked against all appropriate records or databases maintained by the Attorney General and by the Secretary of State, including the Automated Visa Lookout System, to determine any grounds on which the alien may be inadmissible to or deportable from

the United States, or ineligible to apply for or be granted asylum. . . .

**[1]** The statute, as amended, imposes duties on the Attorney General and the Secretary of State. No new burden for the asylum-seeker is imposed by the amendment. In his interpretation, the IJ found a duty on the part of the asylum-seeker to provide information so that the Attorney General and Secretary of State could carry out their statutory responsibilities. As the IJ acknowledged, no case or regulation so holds. To find this additional burden on the applicant to have been implicitly created by the amendment does not appear to be a sensible way of interpreting a statute that has been so carefully articulated and critically revised. The Government, in its answering brief here, notes what the IJ did but makes no attempt to cite case authority or regulations supporting the IJ's unusual interpretation. We hold the interpretation to be an error of law.

Armed with what appeared to him to be a significant change in the law, the IJ began with calling Kalouma "a person of unknown identity." It then became Kalouma's burden to prove who he was. After reviewing all the testimony, the IJ concluded: "The Court is unsure of his identity." In the IJ's eyes, Kalouma has failed to meet what the IJ has seen as a kind of legal precondition to an asylum application. The IJ's doubt as to his identity and the legal limbo Kalouma therefore inhabits, permeates the IJ's decision.

**[2]** A man who identified himself in terms of his parents, birth date, birth place, tribe and religion and who testified knowledgeably about a variety of specific sites in Sudan, appeared in the IJ's cold conclusion to be simply a stranger who had accidentally arrived at the border. We are compelled to reject this conclusion and the legal error on which the conclusion is based.

**[3]** For the reason stated, the decision of the Board of Appeals is REVERSED, and the case is REMANDED.

TALLMAN, Circuit Judge, dissenting:

I respectfully dissent. I would agree that had the Immigration Judge ("IJ") found Kalouma to be who he claims to be and found his testimony credible, he would be entitled to asylum. The Board of Immigration Appeals affirmed the denial because Kalouma did not meet his burden to show entitlement to asylum. It cited *Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994), and focused solely on the adverse credibility finding. We do not review the record de novo and retry the case without regard to what the IJ heard and articulated when he denied the asylum application. The IJ found Kalouma incredible, substantial evidence supports that determination, and the record does not compel a reasonable fact-finder to conclude otherwise, *see Singh-Kaur v. INS*, 183 F.3d 1147, 1153 (9th Cir. 1999). The majority nonetheless finds that the IJ committed legal error on a separate ground regarding Kalouma's identity that makes no difference to the ultimate conclusion. I would deny Kalouma's petition for review based solely on the adverse credibility determination. The majority takes no issue with it and that is the end of the petition.

The IJ did not, as the majority states, impose some new, legally erroneous burden on Kalouma to prove his identity. Maj. at 10750. An asylum applicant bears the burden of proving that he is a refugee entitled to asylum. 8 C.F.R. § 208.13; *Chebchoub v. INS*, 257 F.3d 1038, 1042 (9th Cir. 2001). Just as the government in a criminal trial bears the burden of proving that the defendant on trial is the person who committed the crime, the alien bears the burden both to establish persecution, and to prove satisfactorily who he is. *See Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003) (citing identity as a key element of the asylum application). The IJ rightly questioned Kalouma's identity based on his incredible story surrounding his claimed persecution, and doubts about an asylum-seeker's identity can also preclude asylum. *See id.* There is substantial fraud in immigration matters, and we should not blind ourselves to the black market in false docu-

mentation that exists in many of these cases. *See* R. Wasem, Congressional Research Service, Report for Congress, *Immigration Fraud: Policies, Investigations, and Issues*, CRS-14 (May 17, 2007) (reporting widespread immigration fraud and citing "[t]he integrity of immigration documents and the capacity to curb immigration fraud" as "among the central themes that underlie the bigger issue of comprehensive immigration reform legislation"); *see also id.* (noting the likelihood that many of the estimated twelve million unauthorized aliens in the United States possess some form of an expired or counterfeit immigration document).

On this record, the IJ raised a legitimate concern over Kalouma's identity, a concern at the heart of his asylum petition, and the inability to confirm his identity constitutes a cogent and substantial reason supporting the adverse credibility determination. After articulating reasons doubting Kalouma's identity, the IJ could properly consider the lack of any proffered documentary evidence to corroborate who he says he is. *See Li v. Ashcroft*, 378 F.3d 959, 964 (9th Cir. 2004).

Even assuming the IJ erred by imposing a new burden on asylum applicants under 8 U.S.C. § 1158(d), we should nonetheless deny Kalouma's petition for review. The IJ here gave completely independent, sufficiently cogent, and substantial reasons for finding Kalouma incredible, and these findings went to the heart of Kalouma's asylum application—his inability to prove his identity, inconsistencies in the alleged past persecution against him and his family, and questionable fear of future persecution based on race and religion.

I disagree with the majority's failure to credit as an independent ground for denying Kalouma's petition several specific adverse credibility findings, particularly those based on (1) Kalouma's conflicting statement in his asylum affidavit that his family was "abducted" when he later testified that his family "voluntarily" left Sudan, (2) Kalouma's inability to recall more than four incidents of personal mistreatment

despite his claim that he had been beaten up many times, (3) Kalouma's confusing and inconsistent details about his uncle's alleged torture,[1] (4) Kalouma's omission from his asylum application of incidents of mistreatment directed at him,[2] (5) Kalouma's admission to the Border Patrol that he came to the United States for an education,[3] and (6) Kalouma's return to Sudan after 1998 notwithstanding the claimed persecution against him, his uncle, and his sister.

As required by our law, the IJ identified these specific and cogent reasons for disbelieving Kalouma's credibility, they go to the heart of his claim, and it is improper to disregard them absent evidence compelling us to do so. *See Singh-Kaur*, 183

---

[1]In his asylum application, Kalouma stated that he "watched [his] uncle tortured and murdered in his hut in the village," but at the merits hearing, he testified that his uncle died within the week following the torture. Given an opportunity to explain the inconsistency, Kalouma unsatisfactorily explained that his uncle was beaten in the hut, "so when they beat him he couldn't survive," they "had to take, rush him, no hospital[,]" and "it was in the hut." *Id.* Prior inconsistent statements are a classic ground to impeach a witness. *See United States v. Hale*, 422 U.S. 171, 176 (1975) ("A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness."); *Grunewald v. United States*, 353 U.S. 391, 418-19 (1957) ("It is, of course, an elementary rule of evidence that prior statements may be used to impeach the credibility of a criminal defendant or an ordinary witness."); *see also Pal v. INS.*, 204 F.3d 935, 938 (9th Cir. 2000) (concluding that testimony inconsistent with the details of the asylum application supported an adverse credibility finding).

[2]"Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted." *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980) (citing 3A J. Wigmore, Evidence § 1042, p. 1056 (Chadbourn rev. 1970)).

[3]Kalouma conceded he told the Border Patrol agent not that he sought refuge from persecution but that he "came here for an education for four years before returning to Sudan." The IJ was entitled to consider that prior statement coupled with Kalouma's long delay in seeking asylum as yet another reason to question the sincerity of the alien's claim of entitlement to it.

F.3d at 1153. Even had the IJ committed legal error in interpreting the alien's burden of proving his identity under 8 U.S.C. § 1158(d), we should deny Kalouma's petition based on the IJ's sound adverse credibility determination, the ground upon which the Board upheld the denial of asylum.

I respectfully dissent.