

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-2008

# Sierra-Ochoa v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1702

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Sierra-Ochoa v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1230.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1230

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1702
_____

GEOVANY SIERRA-OCHOA;
MARTHA LUCIA SIERRA,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA Nos. A96-241-720 and A96-241-721)
Immigration Judge: Honorable Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 7, 2008

Before: RENDELL, GREENBERG and VAN ANTWERPEN, Circuit Judges

(Filed: May 13, 2008)
_____

OPINION OF THE COURT
_____

PER CURIAM

Geovany Sierra-Ochoa ("Sierra-Ochoa"), and his wife, Martha Lucia Sierra,

petition for review of the February 6, 2007 decision of the Board of Immigration Appeals

("BIA") affirming the Immigration Judge's ("IJ") denial of their applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). For the following reasons, we will deny the petition for review.

**I.**

Petitioners are natives and citizens of Colombia who lawfully entered the United States in 1999 and overstayed their visas. In 2002, Sierra-Ochoa filed an application for asylum, withholding of removal, and CAT protection. The application was referred to an asylum officer, who conducted a credible fear interview on or about February 28, 2003, and issued a written assessment referring the application to the Immigration Court. In 2004, Sierra-Ochoa filed a second application for asylum, withholding of removal and CAT protection; around the same time, his wife submitted an application for asylum, withholding of removal and CAT protection based on the same set of facts presented in her husband's application. The applications were referred to the Immigration Court, and a removal hearing took place on August 2, 2005. Sierra-Ochoa was the only witness to testify at the hearing. He testified that he served in the Colombian military and later worked as a bodyguard for various high-ranking officials in the Colombian government. He also testified regarding the disappearance of his father in October 2000, which occurred while his father was transporting a cargo of soap on a Colombian highway. Sierra-Ochoa stated that his father was presumably kidnapped by guerillas affiliated with the Revolutionary Armed Forces of Colombia ("FARC"), and that he has not been seen

2

since.  According to Sierra-Ochoa, his father was abducted because of statements he made in opposition to FARC and because he had refused to cooperate with the guerrillas' demands for money and assistance in the smuggling of weapons, drugs, and food.  After the disappearance, Sierra-Ochoa's mother and sisters allegedly started receiving telephone calls demanding the payment of ransom, but decided not to pay the ransom because of the unlikelihood that payment would bring about the father's release.  Sierra-Ochoa further testified that his mother and sisters have been targeted as a result of their efforts to solicit the help of Colombian authorities in investigating the disappearance.  In particular, he described an incident that occurred several months prior to the hearing where several unidentified individuals attempted to abduct his mother in a taxi.  Consequently, Sierra-Ochoa believes that he and his wife are likely to be harmed if they return to Colombia.  He believes that he is particularly likely to be singled out for persecution by FARC because of his military service and his past employment as a bodyguard for high-ranking officials.

The IJ denied asylum on the grounds that the applications were untimely and there were no changed or extraordinary circumstances excusing the late filings.  The IJ also determined that Petitioners had not demonstrated eligibility for withholding of removal, since Sierra-Ochoa failed to submit any evidence showing past threats to his life or freedom as a result of his pro-government activities and did not give credible testimony.  In support of the adverse credibility determination, the IJ identified inconsistencies

3

between Sierra-Ochoa's testimony at the removal hearing and his prior statements regarding the length of his military service, the number of phone calls that his mother received from the alleged kidnappers, and the suspected cause of his father's disappearance. The IJ further noted that Sierra-Ochoa omitted from his asylum application any mention that he had been employed as a bodyguard in Colombia. Although the IJ did not specifically address whether Petitioners were eligible for CAT relief, he stated at the conclusion of his oral decision that the Petitioners were removable as charged.

Petitioners appealed the IJ's decision to the BIA, which dismissed the appeal on February 6, 2007. The BIA upheld the IJ's determination that Petitioners' asylum applications were time barred and found no clear error in the IJ's adverse credibility finding. The BIA further determined that Sierra-Ochoa had not shown that he would be harmed in Colombia because of his status as a military veteran, and that he had not established a connection between his father's kidnapping and an intent on the part of the perpetrators to harm Sierra-Ochoa or his wife. According to the BIA, the evidence indicated that the kidnapping was an isolated criminal act that was not prompted by the father's political opinion, religion, race, nationality or membership in a particular social group. In addition, the BIA acknowledged that the transcribed copy of the IJ's oral decision did not specifically address whether Petitioners were eligible for CAT protection. However, in light of the adverse credibility determination, the BIA

4

determined that neither Sierra-Ochoa nor his wife had established their eligibility for such relief. Petitioners have filed a timely petition for review of the BIA's decision.

## II.

We lack jurisdiction to review the BIA's determinations that Petitioners' asylum applications were not filed within the one year limitations period and that there were no extraordinary or changed circumstances that would justify tolling of the one-year deadline. See 8 U.S.C. § 1158(a)(3); Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003). However, we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1) to review the BIA's denial of Petitioners' requests for withholding of removal and CAT relief.

In order to qualify for withholding of removal, an alien must show that he suffered past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or that it is more likely than not that he will suffer such persecution following his removal. 8 C.F.R. § 1208.16(b); INS v. Stevic, 467 U.S. 407, 424 (1984). An alien may satisfy this burden by presenting credible testimony. Mulanga v. Ashcroft, 349 F.3d 123, 133 (3d Cir. 2003). In this case, the BIA agreed with the IJ that Sierra-Ochoa's testimony was not credible, and Petitioners challenge the adverse credibility finding on appeal.[1] We review an adverse credibility finding for substantial

---

[1] Respondent argues that Petitioners have waived judicial review of the BIA's denial of withholding of removal by not challenging that ruling in their opening brief. Because Petitioners argue in their brief that the adverse credibility finding is unworthy of deference, and the adverse credibility finding relates to the BIA's denial of withholding of removal, we conclude that Petitioners have not waived judicial review of their claims

5

evidence. <u>Berishaj v. Ashcroft</u>, 378 F.3d 314, 322 (3d Cir. 2004). Under this standard, we must uphold the finding "unless any reasonable adjudicator would be compelled to conclude to the contrary." <u>Id.</u> (quoting 8 U.S.C. § 1252(b)(4)(B)). In order to be entitled to deference, the finding must be based on "inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence of country conditions," <u>Chen v. Ashcroft</u>, 376 F.3d 215, 223 (3d Cir. 2004) (citation omitted), and the discrepancies cited by the agency must go to the heart of the asylum claim, <u>Gao v. Ashcroft</u>, 299 F.3d 266, 272 (3d Cir. 2002). "Generally, minor inconsistencies and minor admissions that reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding." <u>Id.</u> (internal quotation marks and citation omitted).[2] Where, as here, the BIA adopts without discussion the reasons given by the IJ for finding the testimony not credible, we review the decision of the IJ. <u>See</u> <u>Abdulai v. Ashcroft</u>, 239 F.3d 542, 549 n.2 (3d Cir. 2001).

We conclude that substantial evidence supports the adverse credibility finding. As the IJ explained, Sierra-Ochoa gave inconsistent testimony regarding the circumstances of his father's disappearance. At the credible fear interview, Sierra-Ochoa stated that he believed his repeated refusals to donate money to FARC led to the abduction of his father.

_____

for withholding of removal.

[2] The REAL ID Act of 2005, which prescribes new rules relating to adverse credibility findings, does not apply to this appeal because Petitioners filed their applications before May 11, 2005, the Act's effective date. <u>See</u> <u>Chukwu v. Att'y Gen.</u>, 484 F.3d 185, 189 (3d Cir. 2007).

6

However, Sierra-Ochoa subsequently testified at the removal hearing that he suspected the abduction occurred because his father had refused to contribute money and provide other assistance to FARC, and had spoken out against the group's attempts to extort money from him. The IJ also noted that these conflicting explanations were at odds with an article from a Colombian newspaper that was submitted in support of the asylum applications, which reported that Sierra-Ochoa's family suspected that the victim's truck was targeted because the perpetrators were interested in its cargo. In addition, the IJ noted that Sierra-Ochoa did not mention in his asylum application that he worked as a bodyguard for high-ranking officials before he left Colombia. In the portion of the asylum application pertaining to the applicant's recent employment history, Sierra-Ochoa listed two jobs that he had held since arriving in the United States in 1999. He also stated in the application that he had worked as a driver for the "Hees Company," but did not indicate the dates of his employment in that capacity. Based on this evidence, the IJ concluded that Sierra-Ochoa's testimony regarding his past employment as a bodyguard was extremely suspicious and unworthy of belief. The discrepancies cited by the IJ, which are supported by the record, undermine Sierra-Ochoa's credibility with regard to his stated reasons for fearing that he and his wife will be targeted by FARC following their return to Colombia. Thus, we reject Petitioners' claim that the adverse credibility finding is unworthy of deference.

Even assuming, arguendo, that Sierra-Ochoa had given credible testimony at the

removal hearing, Petitioners still would not be entitled to relief. They have not presented grounds for disturbing the BIA's conclusion that Sierra-Ochoa did not sufficiently show that he and his wife are likely to be singled out for punishment by the guerrillas on account of his pro-government activities or his relationship to his father, the victim of an alleged kidnapping. As for Sierra-Ochoa's uncorroborated testimony regarding the attempted abduction of his mother several months prior to the hearing, we note that he did not explain why he believed the attack was perpetrated by individuals associated with FARC, nor did he explain why he believed the assailants would likely target him and his wife following their return.

Finally, Petitioners challenge the BIA's determination that they are not eligible for CAT protection because Sierra-Ochoa's testimony was not credible. Since we have determined that substantial evidence supports the adverse credibility finding, and Petitioners have not cited to evidence indicating that they might be tortured for reasons that are unrelated to their claims for withholding of removal, we will uphold the BIA's decision to deny the CAT claims. See Alemu v. Gonzales, 403 F.3d 572, 576 (8th Cir. 2005); Farah v. INS, 348 F.3d 1153, 1157 (9th Cir. 2003).[3]

_____

[3] Because the IJ denied the applications without specifically addressing in his oral decision whether Petitioners had satisfied the standard for obtaining CAT relief, Petitioners argue that they were deprived of their due process rights to an individualized determination of their interests. We conclude that the due process claims are without merit because there is sufficient indicia from the record that the BIA and IJ adequately considered Petitioners' CAT claims. See Kamara v. Att'y Gen., 420 F.3d 202, 211-12 (3d Cir. 2005). First, we note that the IJ acknowledged in his oral decision that

## III.

For the foregoing reasons, we will deny the petition for review.

---

Petitioners had applied for CAT protection. In addition, the IJ set forth the standard for obtaining CAT relief and found that Petitioners had not presented any evidence of past torture. Although the IJ did not explicitly determine whether Petitioners had shown a sufficient likelihood of being tortured upon their return to Colombia, it is reasonable to conclude, based on the record, that the IJ intended his adverse credibility finding to establish that Petitioners were not eligible for withholding of removal or CAT protection. Notwithstanding the alleged deficiencies in the IJ's decision, there is no dispute that the BIA addressed all claims on appeal and stated in its decision that neither Sierra-Ochoa nor his wife had satisfied the standard for obtaining CAT protection.