OPINION
PER CURIAM.
Amardip Singh, a native and citizen of India, entered the United States without inspection at the Canadian border in March 1998. He was placed in removal proceedings under INA § 212(a)(6)(A)(i) in November 2005. Singh conceded removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT), claiming that he had been persecuted in India because of his political beliefs and activities in the Sikh separatist movement as a member of the Shiromani Akali Dal (Akali Dal) party.
Singh’s hearing testimony differed from his asylum application regarding the number of attacks, the number of arrests, the date on which he received a letter-threat, and where he lived in India, among other things. Singh’s asylum application (1-589) *852 said that he was attacked once in the marketplace on August 8, 1997, and sustained injuries to his left leg and hand. (A.R. at 300). In addition to testifying to the August 8 attack at the hearing, however, Singh testified for the first time that members of the Deba Todha Party, an anti-Sikh party, attacked him and his father on the street on September 1, 1997, before he and his father were arrested that same day. (A.R. 133-35). Singh testified that, after both attacks in 1997, he sought medical treatment from a local doctor whose name and affiliation he no longer remembered. (A.R. 99; 105; 136). He said that his father tried to locate the doctor but was unsuccessful. (A.R. 100-101; 137).
Singh stated in his 1-589 statement that he was arrested twice but he gave no dates or details. (A.R. 300 & 304). In addition to testifying that he and his father were arrested on August 18 and September 1, 1997, (see A.R. 98-99; 136), he also testified that they were arrested and detained for two or three days in 1992, when he was ten years old, (see A.R. 97; 125-126). Singh explained that he did not include the 1992 arrest in his 1-589 statement because he was a child in 1992 and because he was not beaten. (A.R. at 126-27).
Although Singh had originally testified that both he and his father were members of the Akali Dal party, Singh admitted on cross-examination that he was not actually a member. (A.R. 94-95; 147). He testified that he and his father received a letter-threat on July 15, 1997, which differed from his 1-589 statement in which he said that the letter came on June 19, 1997. (A.R. 300; 105 & 124). Although he said in his 1-589 statement that his family moved to Bhada for safety reasons after the marketplace attack in August 1997, (see A.R. 304), he testified at the hearing that he and his family had lived in Bhada for six years, from 1992 through 1998, (see A.R. 122-123). He left Bhada to go to New Delhi, which he left for the United States in 1998. (A.R. 110-12). His older brother, who was not a member of the Akali Dal, lived in New Delhi with his family. (A.R. at 112-113). Singh’s parents remained in Punjab, where his father remained active in the Akali Dal party. (Id.). According to Singh, his father, with whom Singh is in touch on a weekly basis, has had no threats or any other problems since 1998.(M).
Singh submitted affidavits from his father, the family’s landlord in Bhada, and a family friend in Bhada, all of which were similar in content. (A.R. 307). Singh’s father attested, in pertinent part, that “the police want to implicate my son and me in false criminal cases and wanted to kill us in a false encounter that is why. (sic) I send my son to a foreign country i.e. USA in order to escape from the cruelties and unnecessary harassment of the police in March 1998.” (Id.). Singh’s father did not mention in his affidavit the 1997 attacks and arrests or Singh’s arrest as a ten-year old in 1992. Nor did Singh’s father recount in his affidavit what efforts he made to find the local doctor who treated Singh for his injuries in 1997.
The IJ denied Singh’s asylum application as time-barred.[1] The IJ also denied withholding of removal and CAT relief, finding that Singh lacked credibility due to discrepancies and omissions in his testimony, his asylum application, and his father’s affidavit, recounted above.[2] Citing docu *853 mentary evidence in the record, the IJ also found that Singh failed to show a reasonable fear of future persecution or torture. The IJ emphasized that Singh’s father, a member of the Akali Dal, and the rest of the family had experienced no threats or problems in the recent past. The BIA affirmed, finding no clear error in the IJ’s adverse credibility determination. The BIA also ruled that Singh failed to establish that it was more likely than not that he would be persecuted • for his political work or tortured if he was deported to India. Singh filed a timely petition for review.
We will deny the petition. We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review the final order of the BIA denying Singh’s request for withholding of removal and for CAT relief. When, as here, the BIA substantially relies on the IJ’s adverse credibility determination, the Court reviews the decisions of both the IJ and the BIA. Chen v. Ashcroft, 876 F.3d 215, 222 (3d Cir.2004). Whether the BIA applied the appropriate standard of review is a question of law, and is therefore subject to de novo review. See Wang v. Ashcroft, 368 F.3d 347, 349 (3d Cir.2004). We review the factual findings of the IJ, including adverse credibility findings, for substantial evidence. Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir.2003). The IJ’s adverse credibility finding must be upheld unless “any reasonable adjudicator would be compelled to conclude to the contrary.” Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir.2004). “In making a credibility determination, the IJ must provide ‘specific, cogent reasonsfs]’ why the applicant is not credible.” Gabuniya v. Attorney General, 463 F.3d 316, 321 (3d Cir.2006) (citation omitted).
Singh’s primary claim is that the IJ erred in making an adverse credibility determination because the inconsistencies and omissions in his testimony did not go to the heart of his claim. The Government counters that Singh is subject to the credibility standard set forth in § 101(a)(3) of the REAL ID Act, which was enacted before Singh filed his asylum application. Under § 101(a)(3), the trier of fact may consider any inconsistency, inaccuracy or falsehood in an asylum applicant’s written or oral statements, “without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant’s claim.” Gabuniya, 463 F.3d at 322 n. 7. We have not addressed the lawfulness of the new provision in a precedential opinion. We need not decide today whether the IJ’s credibility finding is proper under § 101(a)(3), however, because we conclude that the .credibility determination was proper under the more generous preREAL ID Act standard.
Here, the IJ noted numerous inconsistencies and omissions in Singh’s case for relief, which, taken together, call his credibility into question. Taken in isolation, some of the inconsistencies noted by the IJ could be viewed as minor. For instance, the IJ noted the discrepancy between the date of the letter-threat as recorded in Singh’s 1-589 statement and his hearing testimony. The IJ relied, however, on far more significant inconsistencies and omissions that go to the heart of Singh’s claim. First, Singh omitted his attack and detention in 1992 from his 1-589 statement. Second, although his 1-589 statement mentions the attack that occurred on August 8, 1997, he omitted the attack at a street rally prior to his arrest on September 1, 1997, to which he testified on cross-exami *854 nation. Moreover, Singh admitted that he did not relocate to Bhada with his family to escape further attacks and arrests. When asked to explain the foregoing omissions and discrepancies in the record, Singh gave weak and unconvincing reasons.[3] Based on this record, no reasonable adjudicator would be compelled to find Singh’s testimony credible. See Xie, 359 F.3d at 243; see also Tarrawally v. Ashcroft, 338 F.3d 180, 187 (3d Cir.2003) (holding that an adverse credibility determination is supported by substantial evidence even where only some of the stated bases are appropriate). Because the IJ gave specific, cogent reasons for disbelieving Singh, which the Board adopted, we must uphold the adverse credibility determination. 8 U.S.C. § 1252(b)(4)(B).
Singh next claims that the IJ and the BIA erred when they considered his failure to provide corroboration as a factor in evaluating his credibility. Corroboration goes to the sufficiency of the evidence; thus, it requires analysis independent of an adverse credibility determination. See Chen v. Gonzales, 434 F.3d 212, 221 (3d Cir.2005). A credible applicant for asylum and other relief may be required to supply corroborating evidence to meet his burden of proof. Id. at 218. Here, Singh testified that his father could not find the doctor who treated him in 1997 and he said that his father no longer had the letter-threat in his possession, implying that it was lost. We doubt that the IJ based his credibility determination on Singh’s failure to corroborate, through his father, the reasons why he lacked documentation of his injuries and of the letter-threat. Even assuming that the IJ treated the lack of corroboration as part of the overall credibility assessment, however, the error does not affect the result in this case because we have already concluded that substantial evidence exists to support the IJ’s adverse credibility finding based solely on significant omissions and inconsistencies in Singh’s presentation of his case.[4] Chen, 434 F.3d at 221 (citing Kayembe v. Ashcroft, 334 F.3d 231, 235 (3d Cir.2003)).
Relying on Camara v. Ashcroft, 378 F.3d 361, 372 (4th Cir.2004) (holding that the IJ could not rely solely on an adverse credibility finding to support her denial of asylum and other relief, where the alien presented independent evidence of torture), Singh argues that the IJ wrongly denied his CAT claim based solely on the adverse credibility finding. We conclude that substantial evidence supports the IJ’s conclusion. Unlike in Camara, the 2006 State Department Report and the 2006 British Home Office Report upon which the IJ relied, indicated that members of Akali Dal were not subject to torture or brutal repression. Furthermore, the IJ noted Singh’s testimony that his family experienced no recent attacks on account of their affiliation with a Sikh separatist party. Because we have determined that substantial evidence supports the adverse *855 credibility finding, and because Singh has not cited to evidence indicating that he might be tortured for reasons unrelated to his claim for withholding of removal, we will uphold the BIA’s decision to deny the CAT claim.[5] See Alemu v. Gonzales, 403 F.3d 572, 576 (8th Cir.2005); Farah v. INS, 348 F.3d 1153, 1157 (9th Cir.2003).
Accordingly, we will deny the petition for review.

. Singh admitted at the hearing held August 23, 2006, and at the outset of the hearing on February 1, 2007, that his asylum application was time-barred. (A.R. 65; 157). We lack jurisdiction to review such determinations. See 8 U.S.C. § 1158(a)(3); Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir.2003).

. The IJ also noted that, at his credible fear interview in November 2005, Singh denied *853 having any fear of persecution or torture should he be returned to India. Singh explained, however, that he was so ‘'shaken” by his detention for the first time in the United States that he did not understand what the officer was saying. (A.R. 116-118).

. At one point during cross-examination, Singh said that he might not have understood some of the questions put to him in English. (A.R. 144). In response to the IJ’s direct questioning, Singh confirmed that he had declined the assistance of an interpreter at the removal hearing because he preferred to testify in English, his “best language.” (A.R. 145). He confirmed that he understood everything his attorney asked him on direct examination and everything that was asked so far on cross-examination. (A.R. 146). When asked again if he wanted an interpreter, Singh again declined. (Id.).

. In light of the our conclusion upholding the IJ’s adverse credibility finding, we reject as meritless Singh's contention that the BIA violated due process and its own corroboration standards when it failed to specify the additional evidence required in order to convert Singh’s insufficient claim into a meritorious one.

. Singh's contention that the IJ or the BIA erroneously denied CAT relief because he failed to show “acquiescence" by Indian authorities to the torture of Sikh separatists is meritless. Neither the IJ nor the BIA denied Singh's CAT claim on that ground.