# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN KALOUMA,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney General,

Respondent.

No. 03-74488

Agency No.
A78-535-064

ORDERS
AMENDING
OPINION AND
DISSENT AND
AMENDED
OPINION AND
AMENDED
DISSENT

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 11, 2007—Pasadena, California

Filed August 28, 2007
Amended January 15, 2008

Before: John T. Noonan, Richard A. Paez, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Noonan;
Dissent by Judge Tallman

457

## COUNSEL

Mark A. Teeter, Newport Beach, California, for the petitioner.

Carol Federighi, Assistant United States Attorney, Washington, D.C., for the respondent.

## ORDER

The opinion filed on August 28, 2007 is amended as follows:

Slip op. page 10750 [2], Strike the paragraph in its entirety and substitute the following:

On petition for rehearing, the government now supports its case by citation of *Farah v. Ashcroft*, 348 F.3d 1153 (9th Cir. 2003). No question exists that an asylum seeker must show that he is a refugee. In the first instance that decision belongs to the IJ. We do not intrude upon it but remand for the decision to be made free of the alleged statutory burden added by the IJ that Kalouma had to prove he is who he says he is under § 1158(d)(5)(A)(i). He did provide information as to his birth, his birthplace, his parents, his nationality and his religion. The

IJ gave no reason for finding this identification insufficient or incredible except for the misread statute. The IJ should have the opportunity to assess Kalouma's testimony absent the conviction that the person before him could not be a refugee because he could not demonstrate who he was under § 1158(d)(5)(A)(i). The amended statute does not, as the IJ appeared to think, impose a heightened standard of proof on Kalouma as to his identity.

On remand, it will be appropriate for the IJ to assess Kalouma's credibility afresh apart from a specific statutory burden under § 1158(d). Part of his case, of course, must be satisfactory proof of his refugee status in which identity operates as an element. *Farah v. Ashcroft*, *supra* at 1156.

As instances where his underlying scepticism as to identity led the IJ to distort or misread petitioner's testimony, we may cite the following:

(1)   In his asylum application he stated that he watched his uncle murdered in the hut. In his testimony, Kalouma stated that his uncle died one week after he was beaten in the hut. Finding these two statements inconsistent, the IJ either showed unfamiliarity with American idiom or a determination to discredit Kalouma as if he were a liar. It is perfectly idiomatic, not inconsistent, to say you saw a man being murdered in one place and that he died later at another. John Wilkes Booth murdered Abraham Lincoln in Ford's Theater. Lincoln died nine hours later at a neighboring house. It would be absurd to say Lincoln died at the theater or that he was murdered at the house. American idiom divides in two the cause of death and the result.

(2)   Kalouma told the Border Patrol that he had come to America for an education for four years before returning to Sudan. He later applied for asylum as a refugee. The IJ treated these two positions as inconsistent, establishing Kalouma's insincerity. The IJ either showed ignorance of the way aliens

learn of the asylum process or a predetermined disbelief in Kalouma's credibility. Arriving at the border of the United States, an alien may well have a four-year college education uppermost in his mind. He will probably know little or nothing of the asylum application process. He will certainly not know that he needs to begin the process by claiming asylum before an agent of the Border Patrol. That Kalouma had two motives in coming here proves nothing as to his truthfulness.

(3)   In his asylum application Kalouma did not cite specific instances of mistreatment and in his testimony he gave only four incidents of mistreatment, although he testified that he had been beaten many times. The IJ thought the omissions undermined the petitioner's credibility. So concluding, the IJ revealed either an unawareness of the asylum process and the nature of testimony at the merits hearing or a partiality inclining him to distrust the petitioner. Anyone who has had any experience with asylum cases is aware that asylum applications are usually slapped together with little or inexpert legal advice and that they rarely tell the asylum-seeker's whole story. They are not a preview of the petitioner's testimony. They are not required to be. To fault an applicant because he omitted some fact of significance would be to rule a priori that most asylum applicants are liars because they fail to lay out their case before they get to the judge. As to the "many" beatings, the adjective is imprecise and emphatic. If you or I were mistreated four times on account of our faith, we might well say that we'd been beaten many times. Three examples are usually considered enough to establish a point. A fourth is supererogatory.

So, in this opinion, three examples of the IJ's non-credible credibility findings are enough to show that this IJ did not assess Kalouma's testimony unimpeded by the IJ's assumption as to Kalouma's specific statutory burden.

With these amendments, the petition for rehearing is denied. Judge Tallman would grant the petition for rehearing. No further petitions for rehearing will be entertained.

## ORDER

Judge Tallman's dissent, filed on August 28, 2007, is to be stricken in its entirety and replaced by the following:

"RICHARD C. TALLMAN, Circuit Judge, dissenting:

I respectfully dissent.

On petition for rehearing, the majority now agrees that proof of identity is an element of the petitioner's asylum claim. *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003) (citing identity as a key element of the asylum application); *Matter of O-D-*, 21 I. & N. Dec. 1079, 1081 (BIA 1998) (en banc) (noting that an asylum applicant bears the burden of establishing identity). We also agree that 8 U.S.C. § 1158(d) places no additional burden on an asylum applicant. Rather, as the majority points out, that statutory provision requires the Attorney General to follow certain procedures before granting an asylum application. In interpreting that provision otherwise, the IJ erred.

We disagree on the effect of that error on the IJ's determination of Kalouma's credibility. In my view, the IJ's determination that Kalouma had not proven his identity was supported by substantial evidence in the record, and we can reverse that determination only if Kalouma's evidence is "so compelling that no reasonable factfinder" could have found otherwise. *Garovillas v. INS*, 156 F.3d 1010, 1015-16 (9th Cir. 1998). On this record, the IJ raised a legitimate concern over Kalouma's identity, a concern at the heart of his asylum petition, and the inability to confirm his identity constitutes a cogent and substantial reason supporting the adverse credibility determination. After articulating reasons doubting Kalouma's identity, the IJ could properly consider the lack of any proffered documentary evidence to corroborate who he says he is. *See Li v. Ashcroft*, 378 F.3d 959, 964 (9th Cir. 2004).

Moreover, even if we put aside the issue of identity, we should nonetheless deny Kalouma's petition for review because the IJ gave completely independent, sufficiently cogent, and substantial reasons for finding Kalouma incredible, and these findings went to the heart of Kalouma's asylum application—inconsistencies in the alleged past persecution against him and his family, and questionable fear of future persecution based on race and religion.

The majority fails to credit as an independent ground for denying Kalouma's petition several specific adverse credibility findings, particularly those based on (1) Kalouma's conflicting statement in his asylum affidavit that his family was "abducted" when he later testified that his family "voluntarily" left Sudan, (2) Kalouma's inability to recall more than four incidents of personal mistreatment despite his claim that he had been beaten up many times, (3) Kalouma's confusing and inconsistent details about his uncle's alleged torture,[1] (4) Kalouma's omission from his asylum application of incidents of mistreatment directed at him,[2] (5) Kalouma's admission to

---

[1] In his asylum application, Kalouma stated that he "watched [his] uncle tortured and murdered in his hut in the village," but at the merits hearing, he testified that his uncle died within the week following the torture. Given an opportunity to explain the inconsistency, Kalouma unsatisfactorily explained that his uncle was beaten in the hut, "so when they beat him he couldn't survive," they "had to take, rush him, to hospital[,]" and "it was in the hut." *Id.* Prior inconsistent statements are a classic ground to impeach a witness. *See United States v. Hale*, 422 U.S. 171, 176 (1975) ("A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness."); *Grunewald v. United States*, 353 U.S. 391, 418-19 (1957) ("It is, of course, an elementary rule of evidence that prior statements may be used to impeach the credibility of a criminal defendant or an ordinary witness."); *see also Pal v. INS.*, 204 F.3d 935, 938 (9th Cir. 2000) (concluding that testimony inconsistent with the details of the asylum application supported an adverse credibility finding).

[2] "Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted." *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980) (citing 3A J. Wigmore, Evidence § 1042, p. 1056 (Chadbourn rev. 1970)).

the Border Patrol that he came to the United States for an education,[3] and (6) Kalouma's return to Sudan after 1998 notwithstanding the claimed persecution against him, his uncle, and his sister. Not one of these grounds supporting the adverse credibility determination relates to Kalouma's inability to prove his identity.

As required by our law, the IJ identified these specific and cogent reasons for disbelieving Kalouma's credibility, they go to the heart of his claim, and it is improper to disregard them absent evidence compelling us to do so. *See Singh-Kaur*, 183 F.3d at 1153. Notwithstanding the IJ's error in statutory interpretation of § 1158(d), we should deny Kalouma's petition based on the IJ's sound adverse credibility determination which is adequately supported by substantial evidence in the record, and which is the ground upon which the Board upheld the denial of asylum.

I respectfully dissent."

---

## OPINION

NOONAN, Circuit Judge:

John Kalouma petitions for review of a decision of the Board of Immigration Appeals ("the Board") summarily affirming the decision of an Immigration Judge denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. Holding that the Immigration Judge ("IJ") committed an error of law that permeated his decision, we reverse and remand.

---

[3]Kalouma conceded he told the Border Patrol agent not that he sought refuge from persecution but that he "came here for an education for four years before returning to Sudan." The IJ was entitled to consider that prior statement coupled with Kalouma's long delay in seeking asylum as yet another reason to question the sincerity of the alien's claim of entitlement to it.

FACTS AND PROCEEDINGS

John Kalouma entered the United States in March 2001, was intercepted by the Border Patrol, identified himself as Sudanese, and was promptly charged with inadmissibility. At a hearing before the IJ in 2001, Kalouma admitted the charge and applied for relief. On April 24, 2002, Kalouma's case was presented to the IJ, who issued an oral decision, denying it. Kalouma appealed to the Board of Immigration Appeals. The Board, on October 23, 2003, adopted the IJ's decision, which thus became central to Kalouma's timely petition to us.

At the hearing, Kalouma testified that he was a native of Sudan, a Nuer, born in 1972 in Khartoum, to a family from Shambe in southern Sudan, the son of William and Adasha Kalouma. Kalouma identified himself as a Christian and, more specifically, as a Catholic. Kalouma went on to set out his experiences of persecution by Muslims or Arabs — he used the terms interchangeably.

After hearing Kalouma on direct and on cross-examination by the Government and by himself, the IJ gave his oral decision. In his first sentence, he referred to Kalouma as "a person of unknown identity." Then, after reviewing the procedural steps in the case and the law governing Kalouma's application, he went on as to the changes made in 1996 by the Illegal Immigration Reform and Immigrant Responsibility Act, 8 U.S.C. § 1158. He stated:

> Congress has added Section 208(d)(5)(A) of the Act which enumerates very specific procedures that must be followed regarding an individual's identity before asylum can be granted. The law now requires that "asylum cannot be granted until the identity of the applicant has been checked" against all appropriate places enumerated within the statute.
>
> It would appear then that Congress has imposed a requirement that an identity must be checked and

that it is an absolute requirement before asylum can be granted. It would seem to mean that if an individual who would be otherwise eligible for asylum refuses to have an "identity" check notwithstanding other factors impacting eligibility, this individual could not be granted asylum. It would also seem to suggest, although the Court is not aware of any specific regulations or case law that would offer further guidance, that if the person's "identity" is undetermined, then that person would not be able to be granted asylum as it would seem to follow that the identity would not be able to be checked if it was unknown identity.

The IJ continued:

The Court emphasizes that since the amendments made to the Act by IIRAIRA, Congress for the first time has imposed two new requirements mentioned above that need to be met for an asylum seeker. In this case, of those two amendments, the one that seems to impact or have the greatest impact is the question of "identity." It suggests to this Court that before an identity can be checked, the Immigration and Naturalization Service and the Executive Office for Immigration Review must have an idea of an individual's identity before it can be checked within the parameters expressed by the statute. This Court is not aware of any published decision from the Board of Immigration Appeals or precedent decisions which discuss the impact that the identity requirement now has on the burden of proof.

## ANALYSIS

We review de novo the IJ's statement of the law. *Singh v. INS*, 134 F.3d 962, 966 (9th Cir. 1998). Acknowledging that he was not aware "of any specific regulations or case law" on

the point, the IJ attributed a pivoted place to the amendment to 8 U.S.C. § 1158(d). The relevant language reads as follows:

> (5)(A) Procedures
>
> The procedure established under paragraph (1) shall provide that —
>
> (i)   asylum cannot be granted until the identity of the applicant has been checked against all appropriate records or databases maintained by the Attorney General and by the Secretary of State, including the Automated Visa Lookout System, to determine any grounds on which the alien may be inadmissible to or deportable from the United States, or ineligible to apply for or be granted asylum. . . .

**[1]** The statute, as amended, imposes duties on the Attorney General and the Secretary of State. No new burden for the asylum-seeker is imposed by the amendment. In his interpretation, the IJ found a duty on the part of the asylum-seeker to provide information so that the Attorney General and Secretary of State could carry out their statutory responsibilities. As the IJ acknowledged, no case or regulation so holds. To find this additional burden on the applicant to have been implicitly created by the amendment does not appear to be a sensible way of interpreting a statute that has been so carefully articulated and critically revised. The Government, in its answering brief here, notes what the IJ did but makes no attempt to cite case authority or regulations supporting the IJ's unusual interpretation. We hold the interpretation to be an error of law.

Armed with what appeared to him to be a significant change in the law, the IJ began with calling Kalouma "a person of unknown identity." It then became Kalouma's burden to prove who he was. After reviewing all the testimony, the IJ concluded: "The Court is unsure of his identity." In the IJ's

eyes, Kalouma has failed to meet what the IJ has seen as a kind of legal precondition to an asylum application. The IJ's doubt as to his identity and the legal limbo Kalouma therefore inhabits, permeates the IJ's decision.

**[2]** On petition for rehearing, the government now supports its case by citation of *Farah v. Ashcroft*, 348 F.3d 1153 (9th Cir. 2003). No question exists that an asylum seeker must show that he is a refugee. In the first instance that decision belongs to the IJ. We do not intrude upon it but remand for the decision to be made free of the alleged statutory burden added by the IJ that Kalouma had to prove he is who he says he is under § 1158(d)(5)(A)(i). He did provide information as to his birth, his birthplace, his parents, his nationality and his religion. The IJ gave no reason for finding this identification insufficient or incredible except for the misread statute. The IJ should have the opportunity to assess Kalouma's testimony absent the conviction that the person before him could not be a refugee because he could not demonstrate who he was under § 1158(d)(5)(A)(i). The amended statute does not, as the IJ appeared to think, impose a heightened standard of proof on Kalouma as to his identity.

On remand, it will be appropriate for the IJ to assess Kalouma's credibility afresh apart from a specific statutory burden under § 1158(d). Part of his case, of course, must be satisfactory proof of his refugee status in which identity operates as an element. *Farah v. Ashcroft*, *supra* at 1156.

As instances where his underlying scepticism as to identity led the IJ to distort or misread petitioner's testimony, we may cite the following:

(1)   In his asylum application he stated that he watched his uncle murdered in the hut. In his testimony, Kalouma stated that his uncle died one week after he was beaten in the hut. Finding these two statements inconsistent, the IJ either showed unfamiliarity with American idiom or a determination

to discredit Kalouma as if he were a liar. It is perfectly idiomatic, not inconsistent, to say you saw a man being murdered in one place and that he died later at another. John Wilkes Booth murdered Abraham Lincoln in Ford's Theater. Lincoln died nine hours later at a neighboring house. It would be absurd to say Lincoln died at the theater or that he was murdered at the house. American idiom divides in two the cause of death and the result.

(2)   Kalouma told the Border Patrol that he had come to America for an education for four years before returning to Sudan. He later applied for asylum as a refugee. The IJ treated these two positions as inconsistent, establishing Kalouma's insincerity. The IJ either showed ignorance of the way aliens learn of the asylum process or a predetermined disbelief in Kalouma's credibility. Arriving at the border of the United States, an alien may well have a four-year college education uppermost in his mind. He will probably know little or nothing of the asylum application process. He will certainly not know that he needs to begin the process by claiming asylum before an agent of the Border Patrol. That Kalouma had two motives in coming here proves nothing as to his truthfulness.

(3)   In his asylum application Kalouma did not cite specific instances of mistreatment and in his testimony he gave only four incidents of mistreatment, although he testified that he had been beaten many times. The IJ thought the omissions undermined the petitioner's credibility. So concluding, the IJ revealed either an unawareness of the asylum process and the nature of testimony at the merits hearing or a partiality inclining him to distrust the petitioner. Anyone who has had any experience with asylum cases is aware that asylum applications are usually slapped together with little or inexpert legal advice and that they rarely tell the asylum-seeker's whole story. They are not a preview of the petitioner's testimony. They are not required to be. To fault an applicant because he omitted some fact of significance would be to rule a priori that most asylum applicants are liars because they fail to lay

out their case before they get to the judge. As to the "many" beatings, the adjective is imprecise and emphatic. If you or I were mistreated four times on account of our faith, we might well say that we'd been beaten many times. Three examples are usually considered enough to establish a point. A fourth is supererogatory.

So, in this opinion, three examples of the IJ's non-credible credibility findings are enough to show that this IJ did not assess Kalouma's testimony unimpeded by the IJ's assumption as to Kalouma's specific statutory burden.

**[3]** For the reason stated, the decision of the Board of Appeals is REVERSED, and the case is REMANDED.

---

TALLMAN, Circuit Judge, dissenting:

I respectfully dissent.

On petition for rehearing, the majority now agrees that proof of identity is an element of the petitioner's asylum claim. *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003) (citing identity as a key element of the asylum application); *Matter of O-D-*, 21 I. & N. Dec. 1079, 1081 (BIA 1998) (en banc) (noting that an asylum applicant bears the burden of establishing identity). We also agree that 8 U.S.C. § 1158(d) places no additional burden on an asylum applicant. Rather, as the majority points out, that statutory provision requires the Attorney General to follow certain procedures before granting an asylum application. In interpreting that provision otherwise, the IJ erred.

We disagree on the effect of that error on the IJ's determination of Kalouma's credibility. In my view, the IJ's determination that Kalouma had not proven his identity was supported by substantial evidence in the record, and we can

reverse that determination only if Kalouma's evidence is "so compelling that no reasonable factfinder" could have found otherwise. *Garovillas v. INS*, 156 F.3d 1010, 1015-16 (9th Cir. 1998). On this record, the IJ raised a legitimate concern over Kalouma's identity, a concern at the heart of his asylum petition, and the inability to confirm his identity constitutes a cogent and substantial reason supporting the adverse credibility determination. After articulating reasons doubting Kalouma's identity, the IJ could properly consider the lack of any proffered documentary evidence to corroborate who he says he is. *See Li v. Ashcroft*, 378 F.3d 959, 964 (9th Cir. 2004).

Moreover, even if we put aside the issue of identity, we should nonetheless deny Kalouma's petition for review because the IJ gave completely independent, sufficiently cogent, and substantial reasons for finding Kalouma incredible, and these findings went to the heart of Kalouma's asylum application—inconsistencies in the alleged past persecution against him and his family, and questionable fear of future persecution based on race and religion.

The majority fails to credit as an independent ground for denying Kalouma's petition several specific adverse credibility findings, particularly those based on (1) Kalouma's conflicting statement in his asylum affidavit that his family was "abducted" when he later testified that his family "voluntarily" left Sudan, (2) Kalouma's inability to recall more than four incidents of personal mistreatment despite his claim that he had been beaten up many times, (3) Kalouma's confusing and inconsistent details about his uncle's alleged torture,[1] (4)

---

[1]In his asylum application, Kalouma stated that he "watched [his] uncle tortured and murdered in his hut in the village," but at the merits hearing, he testified that his uncle died within the week following the torture. Given an opportunity to explain the inconsistency, Kalouma unsatisfactorily explained that his uncle was beaten in the hut, "so when they beat him he couldn't survive," they "had to take, rush him, to hospital[,]" and "it was in the hut." *Id.* Prior inconsistent statements are a classic ground

Kalouma's omission from his asylum application of incidents of mistreatment directed at him,[2] (5) Kalouma's admission to the Border Patrol that he came to the United States for an education,[3] and (6) Kalouma's return to Sudan after 1998 notwithstanding the claimed persecution against him, his uncle, and his sister. Not one of these grounds supporting the adverse credibility determination relates to Kalouma's inability to prove his identity.

As required by our law, the IJ identified these specific and cogent reasons for disbelieving Kalouma's credibility, they go to the heart of his claim, and it is improper to disregard them absent evidence compelling us to do so. *See Singh-Kaur*, 183 F.3d at 1153. Notwithstanding the IJ's error in statutory interpretation of § 1158(d), we should deny Kalouma's petition based on the IJ's sound adverse credibility determination which is adequately supported by substantial evidence in the record, and which is the ground upon which the Board upheld

---

to impeach a witness. *See United States v. Hale*, 422 U.S. 171, 176 (1975) ("A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness."); *Grunewald v. United States*, 353 U.S. 391, 418-19 (1957) ("It is, of course, an elementary rule of evidence that prior statements may be used to impeach the credibility of a criminal defendant or an ordinary witness."); *see also Pal v. INS.*, 204 F.3d 935, 938 (9th Cir. 2000) (concluding that testimony inconsistent with the details of the asylum application supported an adverse credibility finding).

[2]"Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted." *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980) (citing 3A J. Wigmore, Evidence § 1042, p. 1056 (Chadbourn rev. 1970)).

[3]Kalouma conceded he told the Border Patrol agent not that he sought refuge from persecution but that he "came here for an education for four years before returning to Sudan." The IJ was entitled to consider that prior statement coupled with Kalouma's long delay in seeking asylum as yet another reason to question the sincerity of the alien's claim of entitlement to it.

the denial of asylum.

I respectfully dissent.