Sidiki BAMABA, Petitioner

v.

**ATTORNEY GENERAL OF
the UNITED STATES,**
Respondent.

No. 08–1949.

United States Court of Appeals,
Third Circuit.

Argued May 28, 2009.

Filed: July 28, 2009.

Steven J. Kolleeny (Argued), Boris Bershteyn, Daniel M. Gonen, New York, NY, for Petitioner.

Paul F. Stone, Jeffrey L. Menkin (Argued), Washington, D.C., for Respondent, United States Department of Justice.

Before: FISHER, CHAGARES, and COWEN, Circuit Judges.

## OPINION OF THE COURT

CHAGARES, Circuit Judge.

Sidiki Bamaba petitions for review of a final order of removal entered by the Board of Immigration Appeals (BIA), which denied his application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). The petition for review will be granted in part and denied in part.

### I.

Because we write solely for the parties, we will only briefly summarize the essential facts.

Bamaba was born on June 9, 1979, in Guinea. Since 1984, Guinea has been ruled by President Lansana Conte, leader of the Party of Unity and Progress. Various political parties have opposed President Conte, including the "Rassemblement du pueple de Guinee," loosely translated as the Rally of the Public of Guinea, or "RPG." The RPG is led by Alfa Conte.[1] Bamaba testified that, in January and February 2007, President Conte declared a "state of siege" and placed Guinea under martial law in response to activities of opposition groups, including the RPG. Bamaba further testified that his parents joined the RPG in 1992, to which they belonged continuously until their deaths in February 2007, and that he has taken part in protests against the Conte regime.

Bamaba alleges that he was persecuted by the Conte regime for his involvement with the RPG opposition movement. Bamaba testified that, from 2004 to 2007, he was employed as a security guard for Musa Konneh, a businessman allegedly active in the RPG. On the evening of February 14, 2007, a group of uniformed soldiers arrived at Konneh's gate, where Bamaba stood guard. Bamaba declined to open the gate. The soldiers then forced their way inside. Bamaba testified he was beaten by four of the soldiers. They pounded him with bats and kicked him in the genital area. Bamaba stated that he still has scars on his arm from the incident.

Bamaba testified that he fled to his father's home, but three or four soldiers followed him there. Forcing their way inside, the soldiers pinned Bamaba to the floor at gunpoint as they ransacked the house, where Bamaba's pregnant wife, child, and parents all lived. In the course of searching the home, the soldiers found a photograph of Bamaba's father with Alfa Conte, leader of the RPG. Two of the soldiers allegedly dragged Bamaba's mother into a separate room; Bamaba heard her screaming, and believes she was raped. Bamaba then heard gunshots, and fled the house, leaving behind those inside. Despite a government-imposed curfew, Bamaba hid in a gutter the rest of the night.

---

1. Bamaba refers to the RPG leader using the spelling "Alpha Condé." We will utilize the spelling "Alfa Conte," which is the spelling that appears in the decisions of both the BIA and the Immigration Judge.

Bamaba was arrested the next day for violation of curfew. He testified that, in jail, he was beaten and questioned about his participation in opposition activities. After approximately one week, Bamaba escaped and fled to the home of a family friend. Bamaba testified that the friend took Bamaba's photograph and obtained forged travel documents for Bamaba containing Bamaba's photograph, but another individual's biographical information. Bamaba fled to the United States on March 22, 2007. Passport control officers later identified his documents as fraudulent, and he was detained.

In his written asylum application and at his hearing, Bamaba testified that he was beaten and followed because the government's soldiers identified him with the RPG. Bamaba wrote in his application that: "My parents were beaten on February 14, 2007 because they opposed the regime of President Conte. Also because of their membership with the RPG. I was beaten because of my association with people who strongly opposed the President's leadership, and I participate[d] in the demonstration."

Bamaba obtained, and submitted into evidence as part of his claims, various documents, including a copy of his birth certificate, copies of his parents' RPG membership cards, and a letter confirming his employment. Bamaba submitted documentation confirming a testicular mass, which he testified was the result of the assault suffered in Guinea. Bamaba also submitted copies of his parents' official death certificates, issued in July 2007. According to the certificates, Bamaba's parents both died on February 16, 2007, two days following the alleged confrontation with government soldiers at his father's home. The certificates list a liver tumor and a hemorrhage as the respective causes of his father's and mother's deaths.

## II.

Bamaba entered the United States on March 22, 2007, and applied for asylum, withholding of removal, and relief under the CAT. The Immigration Judge (IJ) denied Bamaba's applications, concluding that Bamaba was not credible, that, in the alternative, Bamaba failed to show that he was persecuted because of his political opinion, and that Bamaba did not meet the standards for relief under the CAT because there was no objective evidence of torture.

The IJ's adverse credibility determination was based on certain perceived inconsistencies. First, the IJ found that documentary evidence contradicted his testimony that he fled Guinea following his alleged persecution in February 2007. The evidence showed that Bamaba filed an application to leave Guinea as early as November 25, 2006, and that travel documents were issued to him on January 27, 2007. The IJ found "one other glaring discrepancy" in Bamaba's testimony. Bamaba testified that the soldiers attacked his family after discovering a photograph of his father with Conte but, the IJ noted, Bamaba did not mention that his father was a member of the RPG in his asylum application. The IJ found that this was a "significant oversight" that "goes to the heart" of his asylum claim.

Bamaba appealed to the BIA, arguing that the record contradicted the IJ's findings with respect to his parents' affiliation with the RPG and Bamaba's written application. Bamaba further argued that the Government documents relied upon by the IJ were not reliable or trustworthy. The BIA affirmed the IJ's denial of Bamaba's asylum petition based on its adverse credibility determination. The BIA further determined that Bamaba waived his objection to the IJ's reliance on the Govern-

ment's documentary evidence. Finally, relying on the adverse credibility determination, the BIA held that Bamaba was not entitled to relief under the CAT.

## III.

We have jurisdiction under INA § 242(a), 8 U.S.C. § 1252(a).[2] Where, as here, the BIA "issues a decision on the merits and not simply a summary affirmance, we review the BIA's, and not the IJ's decision." *Chavarria v. Gonzalez,* 446 F.3d 508, 515 (3d Cir.2006) (citations omitted). This Court may review the decision of the IJ when the BIA defers to that decision. *Id.* at 515; *Voci v. Gonzales,* 409 F.3d 607, 613 (3d Cir.2005).

We review the BIA's findings of fact for substantial evidence. *Wong v. Attorney General,* 539 F.3d 225, 230 (3d Cir.2008). The BIA's conclusions regarding evidence of past persecution and the well-founded fear of persecution are findings of fact. *Id.* "Under the deferential substantial evidence standard, the BIA's findings must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Id.* (citation omitted); *see* 8 U.S.C. § 1252(b)(4). "We will not accord the BIA deference where its findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record." *Chavarria,* 446 F.3d at 515 (citation omitted); *see Balasubramanrim v. INS,* 143 F.3d 157, 162 (3d Cir. 1998).

## IV.

We first consider Bamaba's asylum claim. The Attorney General may grant asylum to an alien in removal proceedings if the alien establishes that he or she is a "refugee" under the INA, 8 U.S.C.

§ 1158(a) and (b). *Wong,* 539 F.3d at 232. Bamaba has the burden to prove that he qualifies as a refugee because he was persecuted in the past or has a well-founded fear of future persecution based on, inter alia, his political opinion, which is the basis of his claim. *See id.* at 232 (citing 8 U.S.C. § 1158(b)(1)(B)(i)).

As a threshold matter, Bamaba argues that the BIA's credibility determination was improper because the BIA engaged in impermissible fact finding. Bamaba also challenges as untrustworthy documentary evidence submitted by the Government, and relied upon by the BIA. Both challenges are without merit.

## A.

■ Bamaba first argues that the BIA engaged in impermissible fact-finding in making its adverse credibility determination. The IJ rested its determination on a broad omission in his written application, namely, *any* mention of his family's affiliation with the RPG. The BIA conceded that the IJ was incorrect, in that Bamaba had provided statements and evidence in his application of his parents' RPG affiliation. The BIA nevertheless affirmed, resting its determination on a narrower discrepancy, Bamaba's failure to mention the Conte photograph.

The BIA may not make factual findings; it may only review the IJ's factual findings for clear error. 8 C.F.R. § 1003.1(d)(3); *Wong,* 539 F.3d at 230. The Government contends that the BIA did not impermissibly find facts because it merely "evaluated the evidence in the record that the Immigration Judge identified and discussed in her opinion." Government Br. at 26. We agree.

---

**2.** Section 242(a), 8 U.S.C. § 1252(a), *as amended by* section 106 of the REAL ID Act of 2005, Pub.L. No. 109–113, Div. B., 119 Stat. 231, 302.

Bamaba focuses on a statement by the IJ that "[i]t was not written in his asylum application that his father had been a member of the RPG." Appendix ("App.") 21. Context makes clear, however, that the IJ was focused on evidence of the soldiers' actual knowledge of that affiliation. The IJ noted that:

> [H]e testified that this mistreatment occurred *because of* his father's membership with the RPG. He was very specific on direct examination that the four soldiers forcefully entered his father's home, they saw a photograph of his father with Mr. Alfa Conte and *thereafter,* proceeded in harming almost the entire family.

*Id.* at 21–22 (emphasis added); *see id.* at 201–03. Similarly, the BIA focused on the absence of evidence in Bamaba's written application that his parents' affiliation with the RPG was known to the soldiers. *Id.* at 4 ("There is no mention of the photograph or the soldiers' knowledge of the respondent's parents' political affiliation in either the respondent's original or amended asylum application."). The BIA's determination was based properly on findings made in the first instance by the IJ. *See Belortaja v. Gonzales,* 484 F.3d 619, 624–25 (2d Cir.2007).

### B.

Bamaba next challenges the BIA's reliance on, and inferences drawn from, travel papers Bamaba used for entry into the United States. Specifically, the BIA found that the Department of Homeland Security "produced information from their databases documenting [that] the request for the I–571 travel document was made on November 25, 2006, with respondent's photograph" attached. App. 5. The BIA found that the evidence contradicted Bamaba's testimony that he made arrangements to leave Guinea only after, and as a result of, the events on February 14, 2007. As a result, the BIA determined that the "inconsistencies with regard to the events that occurred in Guinea and the circumstances surrounding the respondent's leaving Guinea, undermine his claim and support a finding that he is not credible."

██ Bamaba claims that the Government failed to lay the proper foundation for the admissibility of the documents, including how, and from what databases, the documents were generated, and whether the photograph was processed with the application on the "capture date." The BIA determined that Bamaba waived any arguments concerning the admissibility or probative value of the travel documents when he failed to object at the immigration hearing. We agree. Failure to place such objections on the record in an immigration hearing means that such objections will not be preserved for appeal. *In re Garcia–Reyes,* 19 I. & N. Dec. 830, 832 (BIA 1988); *In re R–S–H,* 23 I. & N. Dec. 629, 638 (BIA 2003). The BIA's waiver rule, as with most appellate bodies, is consistent with its rules of practice. *See* 8 C.F.R. § 1003.1(d).[3] Because we conclude that Bamaba waived this argument, we will not review his arguments that the documents

---

3. Bamaba contends that he did not waive this argument by failing to object to the admission of the documents; rather, he contends he is appealing "an improper inference [drawn] from the evidence." This characterization is without merit. His objections to the inferences drawn by the IJ are grounded in his objections to the admissibility and reliability of the documents submitted into evidence. In addition, these documents were specifically used during his cross examination to impeach his testimony that he had never, prior to February 2007, sought travel documents to the United States. Bamaba's counsel did not object then, or when the documents were admitted, and the IJ found that Bamaba was unable to explain the discrepancy.

were unreliable, or that the BIA drew improper inferences from these documents.

## V.

■ Bamaba contends that, even if properly considered, the BIA's findings with respect to the Conte photograph and the travel documents do not constitute substantial evidence supporting the BIA's adverse credibility finding. In addition, Bamaba argues that the BIA's credibility determination was based on the "cumulative effect" of both findings, and that, for the Government to prevail, "both findings that underlie the BIA's adverse credibility determination" must be supported by substantial evidence in the record.

Bamaba maintains that the portion of his oral testimony concerning the Conte photograph was an ancillary, or amplifying, detail in his narrative, and that it is unnecessary for his oral testimony to "precisely track" the written asylum application. Bamaba relies on this Court's opinion in *Cao v. Attorney General,* 407 F.3d 146 (3d Cir.2005), in which we noted that "[a]n applicant's testimony is not per se lacking in credibility simply because it includes details that are not set forth in the asylum application." *Id.* at 160; *see Kaloumia v. Gonzales,* 512 F.3d 1073, 1075 (9th Cir.2008); *Liti v. Gonzales,* 411 F.3d 631, 638 (6th Cir.2005).

The cases cited by Bamaba all involve claims that pre-date the REAL ID Act. Under the REAL ID Act an IJ must consider the totality of the circumstances, without regard to whether an inconsistency or inaccuracy goes to the heart of the applicant's claim. *Kaita v. Attorney General,* 522 F.3d 288, 296 & n. 6 (3d Cir. 2008). This Court must affirm if the inconsistency, along with any other inconsistency, inaccuracy, or falsehood, supports the adverse credibility determination. *See*

*Xiu Xia Lin v. Mukasey,* 534 F.3d 162, 164 (2d Cir.2008). Here, in addition to the Conte photograph, the BIA relied on documentary evidence that Bamaba sought to leave Guinea for the United States months prior to the alleged events of February 2007. This Court does not have discretion to "reweigh the evidence when determining whether the record contains substantial evidence to support" the BIA's conclusion. *Pa. Funeral Dirs. Ass'n, Inc. v. FTC,* 41 F.3d 81, 85 (3d Cir.1994). We may only reverse where the evidence is "so compelling that no reasonable factfinder could fail to find" in the petitioner's favor. *Barker v. Ashcroft,* 382 F.3d 313, 315–16 (3d Cir.2003) (quoting *INS v. Elias–Zacarias,* 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)). This case does not compel such a result.

## VI.

■ Finally, we consider Bamaba's claims under the CAT. The IJ rejected Bamaba's claims under the CAT, and the BIA affirmed, "in view of the adverse credibility determination, that the respondent did not establish that he was 'more likely than not' to be tortured in Guinea upon his return, as the respondent's 'torture' claim is predicated entirely on the incredible asylum claim." App. 5.

To establish a claim for relief under the CAT, Bamaba must establish that it is more likely than not that he would be tortured if returned to the country of removal. 8 C.F.R. § 208.16(c)(2). Torture is defined as "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment. . . ." 8 C.F.R. § 208.18(a)(2). Unlike asylum claims, an alien seeking relief under the CAT need not establish that he is a "refugee" and therefore need not establish that torture is inflicted "on account of" any

protected status. *Silva–Rengifo v. Attorney General*, 473 F.3d 58, 64 (3d Cir.2007). Rather, the torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Shehu v. Attorney General*, 482 F.3d 652, 658 (3d Cir.2007) (citing 8 C.F.R. § 1208.18(a)(1)).[4]

Bamaba argues that the BIA erred in its denial of the CAT claim because the BIA failed to conduct an independent analysis of the objective evidence favoring relief, and that an adverse credibility determination used to deny asylum does not preclude a petitioner from obtaining relief under the CAT. *See Zubeda v. Ashcroft*, 333 F.3d 463, 476 (3d Cir.2003); *Tarrawally v. Ashcroft*, 338 F.3d 180, 188 (3d Cir.2003); *see also Camara v. Ashcroft*, 378 F.3d 361, 371 (4th Cir.2004).

In certain instances, a CAT claim can fail based on an adverse credibility finding in the asylum context when the factual basis for the CAT claim is the same as that rejected in the asylum petition. *See Paul v. Gonzales*, 444 F.3d 148, 157 (2d Cir. 2006); *Hassan v. Gonzales*, 403 F.3d 429, 435 (6th Cir.2005). The requirements for the two claims, however, are not coterminous. For relief under the CAT, Bamaba must establish that it is more likely than not that he would be tortured if returned to Guinea. CAT claims do not require evidence that the individual would face torture *because* of his political opinion, as required with an asylum claim. Two of the instances cited by the BIA in its credi-

bility determination, however—the photograph and the travel documents—pertain to whether Bamaba was attacked because of his political opinion or affiliation, not to whether the events to which he testified occurred at all, or whether those circumstances amounted to torture.

Bamaba submitted evidence that his parents were RPG members. Bamaba submitted objective evidence, including State Department country reports, documenting the violence, torture, and rape committed by Guinea's security forces against members of opposition parties, including the RPG. In addition, this Court has previously recognized the routine use of torture and violence in Guinea against members of the RPG. *See Dia v. Ashcroft*, 353 F.3d 228, 260 (3d Cir.2003). The BIA failed to discuss any of this evidence in denying Bamaba's claims under the CAT. We will thus remand, and allow the BIA to again consider Bamaba's claims for CAT relief.

## VII.

For the reasons stated, we will deny Bamaba's petition for review of his claims for asylum and withholding of removal. With respect to Bamaba's claims for relief under the CAT, we will grant the petition for review, and remand to the BIA for further proceedings consistent with the opinion of this Court.

---

4. Bamaba also applied for withholding of removal. Section 243(h) of the INA, 8 U.S.C. § 1253(h) requires withholding of deportation of an alien "if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." Eligibility for withholding of removal involves a stricter standard ("clear probability") than eligibility for asylum. *Balasubramanrim*, 143 F.3d at 161 n. 8. Unlike asylum, withholding of removal is mandatory if the applicant meets this stricter standard. *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir.2003). If a petitioner fails to meet the lower standard for asylum, "he necessarily fails to meet the standard for withholding of removal." *Id.*