Sunday Josiah IBEAGWA,
aka: Sunday Ibeagwa,
Petitioner,

v.

Michael B. MUKASEY, Attorney
General, Respondent.

No. 06–70845.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 2008.

Filed July 8, 2008.

David E. Dauenheimer, Margaret Perry, U.S. Department of Justice, Civil Division/Office of Immigration Litigation, Christopher J. Walker, U.S. Department of Justice, Civil Division/Appellate Staff, Washington, DC, District Counsel, Office of the District Chief Counsel, U.S. Department of Homeland Security, Phoenix, AZ, Ronald E. Lefevre, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, for Respondent.

Before: TASHIMA, McKEOWN, and GOULD, Circuit Judges.

MEMORANDUM *

Josiah Sunday Ibeagwa petitions for review of the Board of Immigration Appeals' ("BIA") denial of his applications for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). Ibeagwa claims that he was persecuted and severely harmed by the Nigerian government for his participation in the Ijaw Youth Council, a dissident political group operating in the Niger River Delta region of Nigeria. The BIA affirmed the Immigration Judge's ("IJ") determination that Ibeagwa was not credible, and had failed to provide corroborating evidence of his identity as the son of a prominent local chief in the village of Odi. On appeal, Ibeagwa raises several statutory interpretation issues regarding the REAL ID Act. He also challenges the denial of his request for CAT relief. We deny the petition on all grounds.

■ Ibeagwa was found removable on multiple grounds, but the IJ specifically

Stephen D. Benedetto, Quarles & Brady, LLP, Phoenix, AZ, for Petitioner.

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

declined to find that Ibeagwa's conviction for violating California Penal Code § 487(a) (grand theft) constituted an aggravated felony in light of *Penuliar v. Ashcroft*, 395 F.3d 1037 (9th Cir.2005).[1] Subsequent to that decision, however, the Supreme Court vacated *Penuliar* in light of *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007). *See Gonzales v. Penuliar*, —— U.S. ——, 127 S.Ct. 1146, 166 L.Ed.2d 992 (2007). Contrary to Ibeagwa's argument that we cannot overturn a "finding" made by the IJ, it is within our jurisdiction to determine whether, as a matter of law, under *Gonzales v. Duenas–Alvarez*, the conviction counts as an aggravated felony for purposes of 8 U.S.C. § 1252(a)(2)(C).

Ibeagwa argues further that *Duenas–Alvarez* does not address his situation because it did not address the distinction between principal- and accessory-based liability for generic theft offenses and left open the question "whether the possibility of being convicted under [California Vehicle Code] section 10851(a) as an accessory after the fact renders the statute categorically broader than the generic theft offense." *See United States v. Vidal*, 504 F.3d 1072, 1076 (9th Cir.2007) (en banc). Section 10851(a), however, is a vehicular theft statute that unlike § 487(a), "expressly extends to one who is an 'accessory to ... the driving or unauthorized taking or stealing,'" thereby establishing a "realistic probability" that California "'would apply its statute to conduct that falls outside the generic definition of' a theft offense." *Vidal*, 504 F.3d at 1082 (quoting *Duenas–Alvarez*, 127 S.Ct. at 822). *Compare* Cal.Vehicle Code § 10851(a) *and* Cal.Penal Code § 487(a).

Indeed, *Vidal* distinguishes its holding from a case featuring a statute that is similar to § 487(a). *See Vidal*, 504 F.3d at 1082 n. 18 (citing *United States v. Gomez–Mendez*, 486 F.3d 599, 604–05 (9th Cir. 2007)). As we explained in *Vidal*, the defendant in *Gomez–Mendez* could not have been convicted as an accessory after the fact to statutory rape because he was only charged under California Penal Code § 261.5, which "unlike Vehicle Code section 10851(a) *does not expressly include accessory-after-the-fact liability within the statutory offense.*" *Id.* (emphasis added). Here, like *Gomez–Mendez* but unlike *Vidal*, the grand theft statute does not expressly include accessory-after-the-fact liability within the statutory offense, and so, we conclude that Ibeagwa's conviction under § 487(a) was for an aggravated felony, thereby limiting our jurisdiction only to reviewing questions of law and constitutional claims. *See* 8 U.S.C. §§ 1252(a)(2)(C), 1252(a)(2)(d); *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam).

■ Ibeagwa makes several statutory arguments that the government claims were not properly exhausted before the BIA. Though there is no question that Ibeagwa, who proceeded *pro se* below but is now represented by counsel, has refined his legal claims on appeal, we disagree with the government's narrow view of the exhaustion doctrine. Although far from a perfect and refined recitation, Ibeagwa sufficiently raised his arguments before the BIA.

■ Upon reviewing Ibeagwa's statutory arguments, however, we conclude that he is not entitled to relief. Ibeagwa first argues that the IJ and BIA erred in apply-

---

1. Though Ibeagwa appears to concede in his reply brief that our jurisdiction is limited to reviewing only constitutional claims and questions of law, see 8 U.S.C. § 1252(a)(2)(C), his arguments nonetheless exceed this limited scope of review, and so, we initially address his argument that his conviction was not for an aggravated felony.

ing the REAL ID Act to his application, which was apparently signed on May 12, 2005 and time-stamped by the INS on June 1, 2005. The REAL ID Act applies only to "applications for asylum, withholding, or other relief from removal made on or after [May 11, 2005]." Pub. L. No. 109–13, 119 Stat. 231 (2005), § 101(h)(2). Ibeagwa claims that he only applied on June 1, 2005 because he relied on the IJ's May 5, 2005 instructions not to mail the application but to submit it at the June 1 hearing. In any case, he claims his application should be considered timely because he "made" it at his initial hearing by declaring his intent to apply for asylum, which is sufficient in light of the statute's distinguishing between "ma[king]" and "filing" applications.

The BIA does not distinguish between the terms "made" and "filed" as referenced in the REAL ID Act. *See generally Matter of S–B,* 241 I. & N. Dec. 42 (BIA 2006). In addition, the cases upon which Ibeagwa relies are not on point and therefore do not counsel a different conclusion. Finally, the Code of Federal Regulations makes it clear that an asylum application is not "made" or considered complete until the applicant files a completed Form I–589, Application for Asylum and Withholding of Removal. *See* 8 C.F.R. §§ 1208.3(a), 1208.3(c)(3). In sum, the IJ and BIA did not err in applying the REAL ID Act to Ibeagwa's application.

■ Ibeagwa next argues that the IJ and BIA considered some irrelevant factors in application of the REAL ID Act's adverse credibility criteria. However, the IJ's consideration of some irrelevant factors ultimately has no bearing on the outcome of Ibeagwa's petition because under either the pre- or post-REAL ID Act regime, so long as one of the identified grounds underlying a negative credibility finding is supported by substantial evidence, we are bound to accept the negative credibility finding. *Li v. Ashcroft,* 378 F.3d 959, 964 (9th Cir.2004) (affirming negative credibility finding even though some of the factors were factually unsupported or irrelevant).

Here there is more than one relevant ground. These include (1) Ibeagwa's convictions for grand theft of personal property and forgery, *see Unuakhaulu v. Gonzales,* 416 F.3d 931 (9th Cir.2005); (2) discrepancies regarding the date on which Ibeagwa's passport was allegedly issued; (3) Ibeagwa's failure to provide the name of his initial employer in the United States; and (4) Ibeagwa's inability to recall the alleged date of release from detention despite his specific testimony about other aspects of his claim, including dates, that was otherwise verbatim with Ibeagwa's written declaration. These all are appropriate considerations, particularly in light of REAL ID Act's eradication of the "heart of the claim" requirement. *See* 8 U.S.C. § 1158(1)(B)(iii) (adverse credibility findings can be based on inconsistenc[ies], inaccurac[ies] or falsehood[s], "without regard to" whether they "go [ ] to the heart of the applicant's claim").

■ Ibeagwa also takes issue with the conclusion that he failed to provide corroborating evidence of his testimony. He claims that the IJ ultimately held the lack of corroboration against him despite the fact that from the outset, the IJ had indicated that this was the government' burden to carry. Second, Ibeagwa asserts that the IJ and BIA erred by holding that he should have produced his wife to testify even though he was never requested to do so. And finally, he argues that they erred in concluding that verification of his identity from a fellow resident of the village of Odi, was "reasonably available."

Though over the course of the several months of continued proceedings the IJ

made it clear that he expected the government to investigate and produce evidence to rebut Ibeagwa's testimony regarding his identity, under the statute the burden remained on Ibeagwa. *See* 8 U.S.C. § 1158(b)(1)(B)(i), 1158(b)(1)(B)(ii). The IJ also put Ibeagwa on notice of this responsibility, pointedly telling him at the September 6, 2005 hearing, "[t]his is something that should be able to be verified by you. I'm letting you know that I need cooperative [sic.] evidence of your claim, sir."

In addition, Ibeagwa fails to recognize a distinction separating his case from the cases upon which he relies, in which the IJ *bases the adverse credibility finding itself* on a lack of corroborating evidence. *See Sidhu v. INS*, 220 F.3d 1085, 1091 (9th Cir.2000) ("[W]here an applicant produces credible corroborating evidence to buttress an aspect of his own testimony, an IJ may not base *an adverse credibility determination* on the applicant's failure to produce additional evidence that would further support that particular claim.") (emphasis added) (footnote omitted); *Zi Lin Chen v. Ashcroft*, 362 F.3d 611, 620–21 (9th Cir. 2004). Such was not the case here. Ibeagwa failed to meet his burden.

██ Finally, Ibeagwa also appeals the BIA's rejection of his CAT claim. First, he argues that the BIA erred by not addressing his CAT claim, but this claim is not substantiated by the record; the BIA opinion clearly affirms, albeit summarily, the IJ's conclusion with respect to the CAT claim. Second, Ibeagwa claims that the IJ and BIA let the analysis of the withholding of removal claim "wash over" into the analysis of Ibeagwa's petition for CAT relief.

We recognize that "the standards for the two bases of relief are distinct and should not be conflated." *Farah v. Ashcroft*, 348 F.3d 1153, 1156–57 (9th Cir.2003); *Kamalthas v. INS*, 251 F.3d 1279, 1282–83 (9th Cir.2001) (remanding for reconsideration of a CAT claim where the BIA relied unduly on its prior adverse credibility determination and failed to consider relevant country conditions in the record).

Here, however, the IJ did not conflate the standards, but rather, separately considered the CAT claim under the appropriate standard. In addition, the adverse inference against Ibeagwa's credibility is far more damning than most cases in that the IJ did not believe Ibeagwa is who he claims to be. Thus, unlike other adverse credibility determinations that might not affect an IJ's separate weighing of other evidence related to CAT claims, here a more searching review of the documentation could have not benefitted Ibeagwa because the IJ did not believe that this information pertained to him.

The petition for review is **DENIED.**